**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**George A. THUR, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 2006.

Filed Aug. 4, 2006.

Walter Lucas, Cleveland, OH, for appellant.

Michael Handler, Asst. Dist. Atty., Indiana, for Com., appellee.

BEFORE: DEL SOLE, P.J.E., ORIE MELVIN and COLVILLE *, JJ.

* Retired Senior Judge assigned to Superior Court.

*Introduction*

OPINION BY COLVILLE, J.:

¶ 1 George Thur appeals the judgment of sentence imposed after his conviction for involuntary manslaughter, homicide by vehicle while driving under the influence, homicide by vehicle (non-DUI related), driving under the influence, and numerous summary traffic violations. His brief raises eight issues which we have separated and reordered as follows:

(1) whether the driving under the influence statute at 75 Pa.C.S.A. § 3802(c) violates the federal and state guarantees of due process;

(2) whether the driving under the influence statute at 75 Pa.C.S.A. § 3802(a)(1) violates those same due process provisions;

(3) whether the statute proscribing homicide by vehicle while driving under the influence violates due process;

(4) whether the trial court should have suppressed the chemical test results;

(5) whether the trial court's jury instructions on driving under the influence allowed the jurors to speculate impermissibly as to what Appellant's blood alcohol content was at the time of driving, and whether this speculation deprived Appellant of his due process right to demand that the Commonwealth prove all elements of the DUI offense;

(6) whether the trial court's jury instructions on homicide by vehicle while DUI allowed the jurors to speculate impermissibly as to what Appellant's blood alcohol content was at the time of driving, and whether this speculation deprived him of his due process right to demand that the Commonwealth prove all the elements of the homicide offense;

(7) whether there was sufficient evidence to sustain the conviction for homi-

cide by vehicle while driving under the influence; and

(8) whether the conviction for DUI merged with the conviction for homicide by vehicle while DUI, thus making it illegal for the sentencing court to impose penalties on both counts.

¶ 2 We affirm with respect to Appellant's first seven claims. Regarding his eighth issue, we vacate the judgment of sentence on the DUI counts.

### Facts

¶ 3 The trial evidence revealed the following facts. On June 13, 2004, between 5:00 and 5:15 p.m., Sandra Ohler was driving her car west on U.S. Route 422. Ahead of her on the road, traveling in the same direction, Appellant was driving his truck. Ohler followed the truck for roughly one mile, noticing no erratic driving or other indications that Appellant was having any trouble operating his vehicle. As Appellant rounded a curve, Ohler watched his vehicle move into the oncoming lane and collide head-on with an S–10 truck.

¶ 4 Stopping her car, Ohler went to Appellant's truck and saw that he was the sole occupant. She noticed beer cans scattered around the outside of the vehicle and she smelled alcohol. Appellant had a bloody nose and was somewhat belligerent with Ohler. The two occupants of the oncoming S–10 died from the blunt force trauma of the crash.

¶ 5 State Police arrived at the scene. One trooper, Douglas Berezansky, saw five unopened beer cans on the road berm just outside Appellant's truck. He also saw five cans inside the truck, one of which was open and empty. All of the cans were cold. There was also a cooler in the truck. Berezansky smelled beer and saw that Appellant's air bag had been deployed.

¶ 6 A second trooper, Ralph Greene, approached Appellant as he sat in an ambulance. The trooper noticed that Appellant had red, bloodshot eyes and smelled moderately of alcohol. Greene also observed that Appellant's speech was, at times, slow and labored.

¶ 7 Appellant was taken to the hospital. While there, Trooper Greene arrested Appellant for DUI and then obtained his written consent for a blood test. The blood sample, drawn at 6:50 p.m., showed a blood alcohol content (BAC) of 0.19%.

¶ 8 Trooper Michael Schmidt, a collision specialist, reconstructed the accident. He determined that Appellant's vehicle crossed the center line and caused the collision. According to Schmidt, neither vehicle was traveling at an excessive speed, and there was no evidence of mechanical failure in either truck.

¶ 9 The Commonwealth charged Appellant with the previously mentioned crimes. He proceeded to a jury trial and lost.

¶ 10 The sentencing court imposed the following penalties:

| Offense | Sentence |
| --- | --- |
| Homicide by Vehicle While DUI (2 Counts) | Not less than 3½ nor more than 10 years, consecutive at each count |
| Involuntary Manslaughter (2 Counts) | Not less than 1 nor more than 2½ years, consecutive at each count and consecutive to the homicide by vehicle while DUI counts |
| Homicide by Vehicle Non-DUI (2 Counts) | No further penalty |
| DUI (BAC ≥ 0.16%) (1 Count) | Not less than 72 hours nor more than 6 months, concurrent with all other sentences |
| DUI General Impairment (1 Count) | No further penalty |
| Summary Traffic Offenses | Fines |
| **Total Incarceration** | **Not less than 9 nor more than 25 years** |

¶ 11 At the homicide, manslaughter, and DUI counts, the court also imposed restitution and various fines, along with the

alcohol evaluations and safe driving classes required because of the DUI convictions.

*Statutes in Question*

¶ 12 While Appellant raises eight issues, they all relate to one or more of the following three statutes.

**75 Pa.C.S.A. § 3802. Driving under the influence of alcohol or controlled substance**

**(a) General Impairment—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \* \* \* \*

**(c) Highest rate of alcohol.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

\* \* \* \* \* \*

**75 Pa.C.S.A. § 3735. Homicide by vehicle while driving under the influence**

**(a) Offense defined.-**Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death . . . .

\* \* \* \* \* \*

**75 Pa.C.S.A. § 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.—**Any person who drives . . . a vehicle in this Commonwealth shall be deemed to have given consent to [a chemical test of blood] . . . for the purpose of determining the alcoholic content of blood . . . if a police officer has reasonable grounds to believe the person to have been driving . . . :

(1) in violation of section . . . 3802 (relating to driving under influence of alcohol) . . .

\* \* \* \* \* \*

**(c) Test results admissible in evidence.—**In any . . . criminal proceeding in which the defendant is charged with a violation of section 3802 . . . the amount of alcohol . . . in the defendant's blood, as shown by chemical testing . . . shall be admissible in evidence.

\* \* \* \* \* \*

*Issue 1*

*Whether the driving under the influence statute at 75 Pa.C.S.A. § 3802(c) violates the federal and state guarantees of due process.*

¶ 13 Appellant first challenges the constitutionality of the driving under the influence statute at 75 Pa.C.S.A. § 3802(c). He contends that this subsection violates the due process provisions under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. More particularly, he argues that Subsection 3802(c): (1) is void for vagueness; (2) is overly broad; (3) relieves the Commonwealth of its burden to prove that the accused had a certain BAC at the time of

driving; and (4) creates an irrebuttable presumption that a BAC at the time of testing necessarily means that the accused had that BAC at the time he drove. We start by reviewing the general principles applicable to each of these four arguments.

*Principles of Due Process Analysis*

¶ 14 Due process demands that a statute not be vague. *Commonwealth v. Mayfield*, 574 Pa. 460, 832 A.2d 418, 422 (2003); *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996). A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. *Commonwealth v. McCoy*, 895 A.2d 18, 30 (Pa.Super.2006). A vague law is one whose terms necessarily require people to guess at its meaning. *Mayfield*, 832 A.2d at 422. If a law is deficient—vague—in any of these ways, then it violates due process and is constitutionally void. *Id.*

¶ 15 By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. *McCoy*, 895 A.2d at 30. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior. *Mayfield*, 832 A.2d at 422; *Barud*, 681 A.2d at 165; *Commonwealth v. Mikulan*, 470 A.2d at 1343 (Pa.1983) (plurality); *McCoy*, 895 A.2d at 30.

¶ 16 At the same time, however, the void for vagueness doctrine does not mean that statutes must detail criminal conduct with utter precision. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Mikulan*, 470 A.2d at 1343 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110–12, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Indeed, due process and the void for vagueness doctrine are not intended to elevate the "practical difficulties" of drafting legislation into a "constitutional dilemma." *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). Rather, these doctrines are rooted in a "rough idea of fairness." *Id.* As such, statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful. *Id.* Such statutes do not run afoul of due process of law. *Id.*

¶ 17 Due process also prohibits statutes that are overly broad. A law is overly broad if it punishes constitutionally protected activity as well as illegal conduct. *McCoy*, 895 A.2d at 30.

¶ 18 Although overbreadth and vagueness are often raised together, they are distinct concepts. As such, we will address these questions separately, first deciding if the challenged statute defines the offense clearly and then considering whether the statute sweeps impermissibly into otherwise protected conduct.

¶ 19 Additionally, due process dictates that the Commonwealth has the burden to prove every element of an offense, whatever those elements may be. *Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871, 874 (2003).

¶ 20 Further, a defendant is permitted to rebut or otherwise defend against the Commonwealth's evidence on the statutory elements, whether or not the evidence has given rise to any inferences or presumptions concerning those elements. *Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d 384, 392 (2000).

¶ 21 Finally, when evaluating challenges to a statute—whether those

challenges are based on vagueness, over-breadth, the Commonwealth's burden of proof, the right to defend, or any other considerations—we must also keep in mind that there is a strong presumption that legislation is constitutional. *Pennsylvanians Against Gambling Expansion Fund, Inc., et al. v. Commonwealth of Pennsylvania,* 583 Pa. 275, 877 A.2d 383, 393 (2005). A party challenging legislation bears a heavy burden to prove otherwise. *Id.* Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions. *McCoy,* 895 A.2d at 30.

¶ 22 Having in mind the foregoing principles, we now turn to Appellant's attack on the constitutionality of the DUI statute, beginning with 75 Pa.C.S.A. § 3802(c).

### Vagueness

¶ 23 A panel of this Court has determined that Subsection 3802(c) does not encourage arbitrary or discriminatory enforcement and that the meaning of its words is not vague. *McCoy,* 895 A.2d at 31–33. For example, the BAC of 0.16% is objective, thus discouraging arbitrary application. *Id.* The statute plainly tells people that they cannot drive after they have consumed enough alcohol such that they will reach a 0.16% BAC within two hours after driving. The two-hour window is clear. *Id.* The activities—drinking and driving—are likewise plain. *Id.* There is fair notice, indeed an explicit warning, as to the forbidden conduct. No one has to guess at the meaning of this statute. *Id.*

¶ 24 Nevertheless, Appellant argues that Subsection 3802(c) is vague because it fails to provide reasonable standards by which an ordinary person can gauge his future conduct. His reasoning can be stated as follows: A person drinks and then drives. There is no way for that person to predict whether his or her BAC will reach 0.16% within two hours of driving. Therefore, the driver cannot gauge when his or her contemplated conduct of drinking and driving will ripen into a crime. As such, the statute violates due process. This is an argument slightly different than the ones addressed in *McCoy.*

¶ 25 Examining the law under the previous DUI provisions will help us to address Appellant's current contention. The prior statute made it illegal to operate a motor vehicle with a BAC of 0.10% or greater at the time of driving. 75 Pa.C.S.A. § 3735(a)(4), Repealed by 2003, Sept. 30., P.L. 120, No. 24, § 14, effective Feb. 1, 2004. Under that provision, therefore, drivers had to predict if their BAC levels would reach a certain amount while they were operating their vehicles.

¶ 26 In *Mikulan,* the driver contended that there was no reasonable way for a person to make such a prediction. He claimed that drivers could not ascertain when their alcohol levels would pass into the prohibited range and, as such, they had to guess whether their conduct would be criminal or not. The driver maintained that this level of uncertainty, this need for prediction, rendered the statute void for vagueness under the due process provisions.

¶ 27 The *Mikulan* driver misperceived the vagueness doctrine by demanding more statutory precision than was required under due process. *Mikulan,* 470 A.2d at 1343, 1344. The federal and state constitutions require that statutes provide fair warning, not mathematical precision, as to what actions are illegal. *Id.* Admittedly, the old statute did require some estimation: Drivers had to estimate when their BAC might pass the limit. But this estimation did not render the statute vague. *Id.*

¶ 28 Put another way, there was, under the prior law, some limited uncertainty in the statute: Drivers had to make a judgment about how much drinking might be too much. Those drivers might well make errors in judgment when predicting how many drinks would take them to the proscribed mark.

¶ 29 The statute thus created some risk of erroneous judgment as to how much drinking was permissible before driving. However, there was also some risk that people who drank and drove could cause accidents, injuring unwitting victims. The Supreme Court recognized that the General Assembly has a compelling interest in protecting the citizenry against drunk driving. In light of that interest, it was constitutionally permissible for the Legislature to place the limited risk of erroneous judgment on the persons choosing to drink and drive. *Id.* The estimation or risk inherent in the statute—the need for prediction, the limited uncertainty—was not so great as to offend the principles of due process. *Id.*

¶ 30 The Supreme Court also recognized that there are widely available charts concerning the number of drinks that can be safely consumed by persons of varying weights. *Id.* These charts can help guide people when estimating their alcohol levels, thus making the process of estimation not so burdensome. *Id.* at 1343–45. The court would not strike down the statute merely because the driver had to estimate and could not "pinpoint that last drop of alcohol" that would take him into the proscribed range. *Id.* at 1343.

¶ 31 From the *Mikulan* reasoning, we distill the following proposition: It is constitutionally permissible to require drivers to predict their BACs at some reasonable future time after drinking. Under the old statute, the relevant future time was the period during which the person might be driving. Under the new statute, the relevant future time is the period within two hours after driving.

¶ 32 We believe it is no more difficult for drivers to predict their BACs within two hours after driving than it was to predict them at the time of driving. Both predictions involve a general estimation. Drivers know what they weigh, how much they drink and how much time passes during and after drinking. They are required to know how much alcohol is in their blood and how much has perhaps "worn off". They know how soon after drinking they choose to drive, and they know when two hours after that point will be.

¶ 33 Although the two-hour time period means that drivers have to account for absorption and dissipation rates over those two hours, such considerations have always been an inherent, if unstated, part of the BAC estimation incumbent upon drivers. While it is doubtful that drinkers have ever articulated the terms "absorption" and "dissipation" in the course of deciding whether they should drive, it is undeniable that the statute placed on those drivers the responsibility to realize that a certain amount of alcohol consumed in a certain time period would be absorbed into their blood such that the had a prohibited BAC level. Likewise, it is equally certain that such drinkers had to decide if they had "sobered up" enough—if enough drinks had "worn off"—such that they could legally drive. These were implicit, albeit not technically precise, considerations of absorption and dissipation.

¶ 34 The new law is the same. Drinking drivers can estimate their BACs and regulate their conduct. This process of estimating a BAC is not unreasonable, speculative or overly burdensome. It is something that people of common, ordi-

nary intelligence can do. Drivers can gauge their contemplated drinking and driving just as they did under the old law. It is just that they now must keep in mind their BACs for a slightly expanded period of time.

¶ 35 We find it was constitutionally permissible to require Appellant to monitor his conduct so as to ensure that he did not have a prohibited blood alcohol level at any time within two hours of driving. For all of these reasons, we hold that 75 Pa. C.S.A. § 3802(c) is not void for vagueness.[1]

## Overbreadth

¶ 36 Appellant contends that Subsection 3802(c) is overly broad. His analysis (with which we disagree) can be summarized as follows: First, he insists that the Legislature intended to penalize driving with a certain blood alcohol level, in this case 0.16%. Second, the words of the statute prohibit a person from having that level within two hours after driving, rather than just while driving. He argues that a later-obtained BAC is unrelated to the driver's alcohol level when he was operating the vehicle. A person might drive with a BAC below the proscribed mark but it might rise above such a level within two hours after driving. According to Appellant, the statute would then allow for a criminal conviction and penalty even where the driver operated the vehicle with a BAC below the prohibited mark. The law therefore might punish legal behavior and, as such, it is overly broad.

¶ 37 Appellant's first analytical error is his assumption that the General Assembly sought to penalize only **driving with** a BAC of 0.16%. It did not. Instead, it plainly intended to penalize driving after drinking enough alcohol that the BAC reaches 0.16% at anytime within two hours after driving.

¶ 38 This Court addressed such an analytical error in *McCoy*, 895 A.2d at 31–33. The Court noted that the previous DUI statute provided that a person could not legally operate a motor vehicle with a blood alcohol content of 0.10% or greater **at the time of driving**. 75 Pa.C.S.A. § 3735(a)(4), Repealed by 2003, Sept. 30., P.L. 120, No. 24, § 14, effective Feb. 1, 2004. This provision meant that a person driving with a BAC below 0.10% was presumably within the law. *McCoy*, 895 A.2d at 31.

¶ 39 The current statute is unlike the previous one: There is no longer a statutory provision such as the old § 3735(a)(4) giving rise to a presumptive legal limit at the time of driving. *McCoy*, 895 A.2d at 33. There is no indication that it is legal to drive below a certain limit or that it becomes illegal to drive above a certain limit. *Id.*

¶ 40 Furthermore, there is no statutory, constitutional or common law right to drink any amount of alcohol before driving or to drive with any particular BAC. *Id.* Rather, the pertinent inquiry under the current § 3802(c) is whether the person consumed alcohol such that the BAC meets or exceeds 0.16% within two hours after driving. *Id.* Therefore, Appellant is also wrong to assume that a driver operating a vehicle with a BAC below 0.16% and

---

1. Our analysis has referenced the *Mikulan* Supreme Court opinion. We recognize that *Mikulan* was a plurality decision. Nonetheless, that opinion sets forth reasoning that provides guidance for the analysis of the case before us. Additionally, we have a duty to effectuate the decisional law of the Supreme Court as faithfully as possible. *Commonwealth v. Griscom*, 411 Pa.Super. 49, 600 A.2d 996, 998 (1991). We think it would be improper and foolhardy to ignore the *Mikulan* reasoning merely because it was a plurality decision.

whose level reaches that mark within two hours has somehow performed a legal act that is wrongly punished. To the contrary, the driver has done something illegal: He or she has had enough drinks such that his or her BAC reached the mark within two hours after driving. Such driving was not constitutionally immune from punishment. The Legislature can and has provided a sanction for such driving in its effort to deter drunk driving. The statute does not punish protected behavior.

¶ 41 We recognize that the title of the statute in question is **Driving** Under the Influence of Alcohol or Controlled Substance. 75 Pa.C.S.A. § 3802 (emphasis added.) Appellant suggests that, because of this title, the Legislature could only proscribe certain BACs at the exact time of driving rather than during a wider time frame. We will not shackle the Legislature to such precision. In their effort to combat the dangers of drunk driving, the lawmakers have evidently chosen to take an aggressive approach, penalizing offenders for driving if they have consumed enough alcohol to bring them to the proscribed level at any time within two hours after driving.

¶ 42 This approach is admittedly more comprehensive than the old statute which only prohibited BACs at the exact time of operating a vehicle. However, it seems to us that this step is reasonably related to the legitimate, indeed compelling, legislative goal of protecting the health and safety of persons on the roadways. *See Mikulan*, 470 A.2d at 1342 (finding that the General Assembly has a compelling interest in protecting citizens against drunk drivers).

¶ 43 This is merely common sense. By enlarging the time period in which a BAC is outlawed, the Legislature more effectively deters drunk driving. This effort is rational and inoffensive to due process. Subsection 3802(c) is not overly broad.

### Commonwealth's Burden

¶ 44 Next, Appellant claims the two-hour window under 3802(c) relieves the Commonwealth of the burden to prove that his driving-time BAC reached 0.16%. Appellant is mistaken because he again wrongly assumes that one of the essential elements of the offense is having a 0.16% BAC at the time of driving. A person's blood alcohol level at driving time simply is not part of Subsection 3802(c).

¶ 45 Pursuant to the words of the statute, and our preceding discussion, the elements are: (1) that a person drove, operated or was in actual physical control of a motor vehicle; and (2) that such action was conducted after imbibing enough alcohol that the actor's BAC reached 0.16% within two hours after driving. 75 Pa.C.S.A. § 3802(c).

¶ 46 Appellant cannot prevail on his argument that the statute somehow relieves the Commonwealth of the burden to prove an element when, in fact, there is no such element.

### Irrebuttable Presumption/Right to Defend

¶ 47 Appellant's next argument has two subparts: (1) that the statute violates due process because it permits the post-driving BAC to raise a presumption that the driver had that BAC while driving; and (2) that it is a due process violation for that presumption to be irrebuttable because an irrebuttable presumption disallows the accused from contesting the Commonwealth's proof.

¶ 48 These arguments are without merit, if only because they rest, once again, on untrue suppositions. First, a chemical test taken within two hours of driving indicates the level at test time, not driving time. There is no presumption about what the

driver's BAC was when operating the vehicle. The operating BAC is not an element.

¶ 49 Second, there being no presumption at all, it certainly is not an irrebuttable one. Moreover, nothing in the statute disallows a defendant from contesting or defending against whatever evidence the Commonwealth may introduce.

¶ 50 A defendant can testify, cross-examine witnesses and call witnesses, expert or otherwise. PA.CONST. art. I, § 9. Even more specifically, a party accused under the DUI statute may always introduce competent evidence to rebut the chemical test results. *See MacPherson*, 752 A.2d at 392 (holding that an accused can introduce evidence to rebut Commonwealth's inferences concerning his BAC); *Commonwealth v. Lippert*, 887 A.2d 1277, 1280 (Pa.Super.2005) (where defendant called expert to testify regarding absorption issues and accuracy of Intoxilyzer machines).

¶ 51 Subsection 3802(c) neither raises impermissible presumptions nor prohibits an accused from defending against DUI charges.

¶ 52 In sum, none of Appellant's arguments meet his burden to prove that 75 Pa.C.S.A. § 3802(c) clearly, palpably and plainly violates the federal or state constitutions. Indeed, we find no constitutional violation to any degree. Accordingly, Appellant's due process challenges to this subsection fail.

*Issue 2*

*Whether the driving under the influence statute at 75 Pa.C.S.A. § 3802(a)(1) violates the federal and state guarantees of due process.*

¶ 53 Appellant also contests the constitutionality of 75 Pa.C.S.A. § 3802(a)(1). That subsection prohibits driving when the vehicle operator is, because of drinking, incapable of safely operating the automobile. 75 Pa.C.S.A. § 3802(a)(1).

¶ 54 A specific BAC (at any time) is not an element that must be proven under (a)(1). However, BAC evidence is nonetheless admissible as one factor which the jury can consider when determining whether a driver was incapable of safe operation. *Commonwealth v. Zugay*, 745 A.2d 639, 646–47 (Pa.Super.2000). Appellant claims that a BAC obtained two hours after driving indicates nothing about a person's ability at the time of driving. Therefore, according to Appellant, it is mere speculation for a jury to consider and somehow relate the later-obtained BAC to the driver's ability hours earlier. He claims that by facilitating this speculation, the statute offends due process.

¶ 55 We disagree. A review of *Zugay* will be instructive. That case dealt with 75 Pa.C.S.A. § 3731(a)(1), the predecessor statute. Subsection 3731(a)(1) prohibited driving while under the influence of alcohol to a degree rendering the driver incapable of safe driving. This previous statute is similar to current Subsection 3802(a)(1) in that they both are concerned with the inability to drive, not with particular BAC levels.

¶ 56 In *Zugay*, we held that jurors could consider a person's BAC when determining if he was incapable of safe driving under (a)(1) even if the BAC could not be related back to the time of driving. *Zugay*, 745 A.2d at 646–47. We further held that the amount of time elapsed between driving and testing did not affect the admissibility of the test results but, rather, only affected the weight of the evidence. *Id.* Our rationale was that a test result was but one piece of evidence, along with other items such as driving patterns, odor of alcohol, slurred speech, and admissions

of drinking, for the jury to consider and weigh. *Id.*

¶ 57 We think the *Zugay* reasoning retains its force, even under the new statutory scheme. A jury should be free to consider the BAC, regardless of how much time has passed between driving and testing. Prosecutors and defense counsel may argue the weight of such evidence. Jurors can take notice of the chemical test and the time it was performed, and then determine how much weight to place on the test result. They can decide what, if anything, the BAC tells them about the operator's abilities while behind the wheel. Appellant's due process challenge to Subsection 3802(a)(1) is without merit.

### Issue 3

*Whether the statute proscribing homicide by vehicle while DUI at 75 Pa.C.S.A. § 3735 violates the federal and state guarantees of due process.*

¶ 58 In this issue, Appellant contends that 75 Pa.C.S.A. § 3735 violates due process because it is predicated on a conviction under the DUI statute which is itself unconstitutional in the ways he has argued *supra.* Appellant is correct that one of the essential elements of homicide by vehicle (DUI related) is an underlying conviction for driving under the influence. *Commonwealth v. McCurdy,* 558 Pa. 65, 735 A.2d 681, 685 (1999); 75 Pa.C.S.A. § 3735. However, as we have already explained, he is incorrect when he argues that the underlying DUI statute is unconstitutional. Consequently, his claim cannot succeed.

### Issue 4

*Whether the trial court should have suppressed the chemical test results.*

¶ 59 Appellant present two arguments as to why the trial court should have suppressed the blood test results. First, he takes the position that Subsection 3802(c)

of the DUI statute requires that the blood analysis, not merely the blood draw, be completed within two hours of driving. Although his blood was drawn within two hours, it was not analyzed until some twenty hours later. He therefore argues that the test results were inadmissible. Second, Appellant argues that the officer lacked probable cause to conduct the testing.

¶ 60 The standard for reviewing a trial court's denial of a suppression motion is clear: We are limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Stevenson,* 894 A.2d 759, 769 (Pa.Super.2006).

¶ 61 We also need to keep in mind the rules of waiver. When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression. *See Commonwealth v. Gordon,* 364 Pa.Super. 521, 528 A.2d 631, 638 (1987) (holding that this Court cannot review a theory of error different from the theory presented to the trial court even if both theories support the same basic allegation of error giving rise to the claim for relief); *Commonwealth v. May,* 485 Pa. 371, 402 A.2d 1008, 1009 n. 3 (1979) (finding waiver of new argument where the appellant sought to withdraw guilty plea before trial judge on the grounds that the appellant misunderstood the maximum sentence he was to receive but, on appeal, argued for the first time that the plea should be withdrawn because the plea agreement was not disclosed to the trial judge). Cognizant of these notions, we evaluate Appellant's claims.

¶ 62 At no time prior to this appeal did Appellant argue that the statute required his blood analysis to be completed within two hours of driving. This contention was therefore waived. Pa.R.A.P. 302(a).

¶ 63 Appellant did raise the probable cause issue at trial and we will therefore address that matter. To administer a blood alcohol test under 75 Pa. C.S.A. § 1547(a)(1), a police officer needs to have reasonable grounds to believe that the suspect was driving under the influence of alcohol. *Commonwealth v. Aiello,* 450 Pa.Super. 302, 675 A.2d 1278, 1280 (1996); 75 Pa.C.S.A. § 1547(a)(1). In the context of BAC testing, "reasonable grounds" means probable cause. *Aiello,* 675 A.2d at 1280. Probable cause exists where the driver looks and smells like he or she has consumed alcohol and he has been in a head-on accident. *Commonwealth v. Simon,* 440 Pa.Super. 428, 655 A.2d 1024, 1027 (1995). With red eyes, labored speech and a moderate odor of alcohol, Appellant looked, smelled (and sounded) like he had been drinking alcohol. He was in a head-on crash. The trooper had probable cause to conduct the BAC testing. The tests were then admissible pursuant to 75 Pa.C.S.A. § 1547(c). The factual record therefore supports the trial court's refusal to suppress the evidence.

*Issue 5*

*Whether the trial court's jury instructions on driving under the influence at 75 Pa. C.S.A. § 3802(a)(1) allowed the jurors to speculate impermissibly as to what Appellant's blood alcohol content was at the time of driving, and whether this speculation deprived Appellant of his due process right to demand that the Commonwealth prove all elements of the DUI offense.*

¶ 64 The trial court's jury charge on 75 Pa.C.S.A. § 3802(a)(1) (incapable of safe driving) included the following instructions:

> Consider the defendant's blood alcohol along with the other evidence relevant to his condition when you decide whether the defendant was incapable of safe driving.

\* \* \* \* \* \*

> If there was a delay between the time the defendant was driving, operating or in control and the time when the sample was taken, then ask yourselves, did the defendant's blood alcohol level change in the interval?

N.T., 6/7/05, at 245, 246.

¶ 65 Appellant maintains that this portion of the charge allowed the jurors to guess as to what his BAC was at the time of driving. Consequently, the jurors also guessed as to whether he was incapable of driving at that time.

¶ 66 This claim essentially reiterates his argument that it is a due process violation to allow the jury to consider the BAC when passing on the Subsection 3802(a)(1) charge. We already resolved this contention against Appellant when we considered his constitutional challenge to (a)(1). The law permits a jury to consider the later-obtained BAC results along with the other evidence of alcohol consumption (*e.g.,* red eyes, beer cans, occurrence of an accident, odor of alcohol, labored speech) to determine if a defendant was incapable of safe operation under Subsection (a)(1). *McCurdy,* 735 A.2d 681, 684; *Zugay,* 745 A.2d at 646–47. This is exactly how the trial court charged the jurors.

¶ 67 Moreover, the aforementioned portion of the charge cautioned the jurors to keep in mind that Appellant's BAC may have changed while time passed between driving and testing. The court also told the jury to ask, "How much higher or

lower was his blood alcohol level at the time he was driving ...?" N.T., 6/7/05, at 246. The trial court further advised the jurors, "When you are evaluating the blood alcohol evidence and other evidence relevant to the defendant's sobriety, use your common sense, common experience and common knowledge." *Id.* at 245. These instructions did not require the jury to speculate. Rather, they communicated the notion that the jury had to consider what weight they would give to the BAC in light of the time that had passed. The weight of the BAC evidence is exactly what the jury was supposed to consider. *Zugay*, 745 A.2d at 646–47.

### Issue 6

*Whether the trial court's jury instructions on homicide by vehicle while DUI at 75 Pa.C.S.A. § 3735 allowed the jurors to speculate impermissibly as to what Appellant's blood alcohol content was at the time of driving, and whether this speculation deprived him of his due process right to demand that the Commonwealth prove all the elements of the homicide offense.*

¶ 68 When instructing the jurors on vehicular homicide while DUI, the court stated the following:

[T]here is an important factual finding that you must make. That is, that you must find that at the time of operation of the vehicle that the defendant's blood alcohol level was 0.08 percent or greater. If you cannot make such a finding then this charge [75 Pa.C.S.A. § 3802(c)] cannot be the basis of finding the defendant guilty of homicide by vehicle while driving after imbibing alcohol.

N.T., 6/7/05, at 256, 257.

¶ 69 Appellant insists that there was no proof at trial supporting a finding that his BAC reached 0.08% at the time of driving. He claims that the instruction therefore permitted the jury to speculate that his blood alcohol level had reached that point

and, because of the speculation, the Commonwealth never had to prove his driving-time BAC as part of the homicide charge.

¶ 70 Because of our earlier discussion regarding the elements of homicide by vehicle while driving under the influence, we must immediately note that this jury instruction was wrong. The statute regarding homicide by vehicle while DUI does not require the Commonwealth to prove that the accused had any particular BAC at the time of driving. Therefore, the instruction in this case put the jury to the unnecessary task of finding a BAC at driving time. Curiously, however, this error actually favored Appellant. If anything, this instruction rendered a conviction harder because it made the jury find an additional, unnecessary fact.

¶ 71 In any event, there is an even more fundamental reason that prevents us from granting relief to Appellant. Specifically, he waived any objection to this instruction. Before giving this instruction to the jury, the trial court read it verbatim on the record. N.T., 6/7/05, at 224. Appellant's counsel replied, "That is fine." *Id.*

¶ 72 Objections to jury instructions must be raised before deliberations. *Commonwealth v. Betz*, 444 Pa.Super. 607, 664 A.2d 600, 606 (1995); Pa.R.Crim.P. 647(B). Otherwise, they are waived. *Betz*, 664 A.2d at 606. There having been no defense objection, this issue was waived.

¶ 73 Finally, we also note that, irrespective of the instruction concerning 3802(c), the 3802(a)(1) conviction provided a sufficient predicate for the homicide verdict. Appellant's contention lacks merit.

### Issue 7

*Whether there was sufficient evidence to sustain the conviction for homicide by vehicle while DUI at 75 Pa.C.S.A. § 3735.*

¶ 74 The standard of review for claims of insufficient evidence is well-settled.

With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Barnes*, 871 A.2d 812, 819 (Pa.Super.2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. *Id.* We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. *Id.* The jury was free to believe all, part or none of the evidence. *Id.* This Court may not weigh the evidence or substitute its judgment or that of the factfinder. *Id.*

¶ 75 A conviction for homicide by vehicle while DUI requires: (1) a conviction for drunk driving; and (2) proof that drunk driving is what caused the death. *McCurdy*, 735 A.2d at 685; 75 Pa.C.S.A. § 3735.

¶ 76 Appellant attacks the second element, namely causation. The question, therefore, is whether there was sufficient proof that drunk driving is what caused Appellant to crash and that the crash, in turn, caused the deaths.

¶ 77 In *Commonwealth v. Hess*, 446 Pa.Super. 222, 666 A.2d 705, 707 (1995), a jury convicted the appellant of vehicular homicide while DUI. He argued the evidence was insufficient to prove causation. The Commonwealth presented evidence that the appellant had been driving a vehicle which crossed the center line into oncoming traffic, causing a two-vehicle accident. Empty beer bottles were found in his car, and there was evidence that he was intoxicated when he drove. The trauma from the crash killed a passenger in the appellant's car. This Court found that such facts were sufficient for the jury to find that the appellant's drunk driving caused the victim's death. *Id.*

¶ 78 The facts in the case *sub judice* are almost identical to those in *Hess*. Something made Appellant cross lanes. There were no mechanical failures. One rational conclusion is that his being under the influence is what caused him to drive poorly enough to cross lanes and hit the other truck, thereby killing the victims. Based on the evidence, it was reasonable for the jury to find causation beyond a reasonable doubt.

*Issue 8*

*Whether the DUI conviction merged with the conviction for homicide by vehicle while DUI, thus making it illegal for the sentencing court to impose penalties on both counts.*

¶ 79 Driving under the influence and homicide by vehicle while driving under the influence merge for sentencing purposes. *Commonwealth v. Opperman*, 780 A.2d 714, 717 (Pa.Super.2001). Appellant is right that it was illegal for the trial court to impose separate sentences on these charges. While Appellant did not preserve this contention at the trial level, illegal sentence issues are not waivable, and we therefore have jurisdiction to grant relief. *Id.* We vacate Appellant's DUI sentence.

*Disposition of this Appeal*

¶ 80 An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it and **may** remand the matter. 42 Pa.C.S.A. § 706. If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan. *Commonwealth v. Williams*, 871 A.2d 254, 266, 267 (Pa.Super.2005). By contrast, if our decision does not alter the overall scheme, there is no need for a remand. *Commonwealth v.*

*Robinson,* 817 A.2d 1153, 1163 n. 14 (Pa.Super.2003).

¶ 81 In *Williams,* the appellant was convicted of one episode of DUI wherein he violated two subsections of the previous statute, 75 Pa.C.S.A. §§ 3731(a)(1) (incapable of safe driving) and (a)(4)(i) (BAC ≥ 0.10%). The trial court imposed consecutive jail terms of thirty days at each count. On appeal, we determined that the sentence was illegal because the two subsections merged for sentencing purposes. Our decision changed the total time in jail which the court had imposed. As such, our disposition disturbed the overall sentencing scheme. Consequently, we did not merely vacate one of the DUI sentences but, rather, vacated the entire sentence and remanded for resentencing. *Williams,* 871 A.2d at 267.

¶ 82 In *Commonwealth v. Neupert,* 454 Pa.Super. 62, 684 A.2d 627, 628, 629 (1996), the trial court imposed numerous sentences for homicide by vehicle while DUI, homicide by vehicle non-DUI and DUI. The appellant's aggregate term for the homicide counts was four to twelve years. He received a concurrent term of thirty to sixty days for DUI which term, quite evidently, did not increase his period of total confinement.

¶ 83 Because the vehicular homicide while DUI and the DUI counts should have merged, we vacated the DUI sentence. However, because that ruling did not affect the appellant's aggregate sentence, we did not remand. *Id.; see also Robinson,* 817 A.2d at 1163 n. 14 (finding

no need for remand because vacating assault sentence did not disturb sentencing scheme where the assault sentence was concurrent with other terms and did not increase the aggregate length of incarceration).

¶ 84 Here, Appellant's DUI incarceration of seventy-two hours to six months was concurrent with his nine to twenty-five years in prison. Vacating the DUI term does not change the length of his incarceration.[2]

¶ 85 We believe that vacating the particular DUI penalty in this matter does not disturb the trial court's overall sentencing scheme. As such, we vacate only the DUI sentence and we do not remand this case.

¶ 86 Judgment of sentence at 75 Pa. C.S.A. §§ 3802(a)(1) and (c) vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

¶ 87 ORIE MELVIN, J. concurs in the result.

---

**2.** We recognize that the DUI penalty also included a fine, classes and an alcohol evaluation which are now unenforceable as a sentence under 75 Pa.C.S.A. § 3802. To this extent, vacating the sentence does minimally lessen the overall penalty. However, our reading of the record convinces us that these sanctions were not, under the facts of this case, integral parts of the court's sentencing scheme. Even with a decreased penalty, a remand is not necessarily appropriate if the vacated portion of the sentence was not integral to the penalty. *See Commonwealth v. Moran,* 450 Pa.Super. 283, 675 A.2d 1269, 1273 (1996) (finding that restitution was not an integral part of the sentencing scheme, vacating restitution order, and not remanding).