J-S75018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIN HARDY | : | |
| | : | |
| Appellant | : | No. 500 WDA 2017 |

Appeal from the Judgment of Sentence January 18, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003278-2016

BEFORE: SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 4, 2018**

Darrin Hardy appeals from the judgment of sentence entered on January 18, 2017, in the Allegheny County Court of Common Pleas, made final by the denial of post-sentence motions on March 1, 2017. On October 18, 2016, the trial court convicted Hardy of persons not to possess a firearm, carrying a firearm without a license, and false identification to law enforcement.[1] The court sentenced Hardy to a term of two to four years' incarceration, followed by five years' probation. On appeal, Hardy contends the trial court erred in denying his motion to suppress physical evidence, and that there was insufficient evidence to convict him of gun possession and false identification.

---

[1] 18 Pa.C.S. §§ 6105(a)(1) and (c)(1), 6106(a)(1), and 4914(a), respectively.

After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm in part and reverse in part.

The facts, taken from the affidavit of probable cause and the October 18, 2016, suppression hearing and non-jury trial, are as follows: On February 12, 2016, while on detail and en route to Allegheny General Hospital, Allegheny County Sheriff's Deputy Troy Garrett observed a disabled vehicle, blocking two lanes of the Fort Duquesne Bridge. *See* N.T., 10/18/2016, at 25. He stopped to assist because the vehicle was obstructing traffic and in a dangerous location.[2] Deputy Garrett asked the driver of the vehicle, co-defendant Isaiah Peeples, for his driver's license. Peeples replied he only had a learner's permit. *Id.* at 26-27. Deputy Garrett then asked Hardy, the passenger, if he had a driver's license. Hardy answered in the negative, but when asked for his name and date of birth, he identified himself as "Charles Parris, date of birth 11-11-1987." Affidavit of Probable Cause, 2/12/2016, at 2. Deputy Garrett returned to his car to verify their information. He discovered: (1) Peeples had a suspended driver's license; (2) "the passenger came back not found." *Id.*; *see also* N.T., 10/18/2016, at 27-29. Deputy Garrett then requested backup, and Detective Randy Grossman responded to the scene.

---

[2] Deputy Garrett noticed both the tire and rim were bent. *Id.* at 26.

Detective Grossman testified that when he approached the vehicle at issue, he immediately became overcome by the odor of burnt marijuana. N.T., 10/18/2016, at 14.[3] The detective stated he then went up to Hardy and,

> I asked for his name, date [of birth], and Social Security number. He gave me a name and date [of] birth, but he said he couldn't remember anything but the last four of his Social Security number. I have an application on my phone, JNET, where I can pull up people based on their name and date of birth, and it pulled up a person but it wasn't him.

*Id.* at 14-15. Detective Grossman asked Hardy to step out of the car, placed him in handcuffs for officer safety, and advised him that he would be arrested for false identification to law enforcement. *Id.* at 33. The deputy and detective decided they were going to take Hardy to jail to be fingerprinted for positive identification. *Id.* Hardy then provided his correct identification information. *Id.*

Detective Grossman testified that because of the condition of the car made it inoperable, they had to call for a towing company. *Id.* at 34. Moreover, due to the fact that the car would be towed, the officers had to complete an inventory search, during which they recovered a .45-caliber handgun under the front passenger seat. *Id.* Detective Grossman stated the "firearm was positioned with the butt of the firearm facing the passenger side door, and the barrel was facing the rear side of the vehicle." *Id.* Based on

---

[3] Hardy was not charged with any crimes related to the drugs.

his experience, Detective Grossman testified that he believed the gun was placed under the seat by a right-handed individual because:

> If you are holding a firearm with your right hand and you go to place it under a seat like that, (indicating) it would be placed in the position where the butt of the firearm would be facing the passenger side door, and the rest of it the rear of the vehicle.

*Id.* at 35. The detective also indicated the gun was under the front seat rather than the side. *Id.*[4]

Hardy was charged with the crimes of persons not to possess a firearm, carrying a firearm without a license, and false identification to law enforcement. On June 24, 2016, he filed a motion to suppress, alleging: (1) his arrest was made without probable cause, (2) at the time he was arrested and searched, the police did not have a search warrant and no exceptions apply; 3) he made incriminating statements; and (4) the officers did not have probable cause or reasonable suspicion to believe that he was armed and dangerous. *See* Omnibus Pretrial Motion, 6/24/2016, at ¶¶ 2-6. Hardy also argued his detention by police and the subsequent search were illegal and violated his constitutional rights. *Id.* at ¶ 6. However, at the October 18, 2016, suppression hearing, counsel for Hardy limited the scope of argument

---

[4] It was stipulated at trial that the "firearm was found to be in good operating condition, and was within the statutory barrel length requirements and was a firearm as under the definition of the statute." *Id.* at 36. It was also admitted at trial that Hardy did not have a valid license to carry a concealed firearm. *Id.* at 38.

to suppression of "the statement for the false identification charge." N.T., 10/18/2016, at 3. At the end of the hearing, the trial court "conditionally" denied the motion[5] and the matter proceeded directly to a non-jury trial where Hardy was tried with Peeples. The court convicted Hardy of all charges.

Subsequently, on January 18, 2017, the court sentenced Hardy to a term of two to four years' state incarceration, followed by five years' probation for the Section 6105(a)(1) crime.[6] Hardy then filed a post-sentence motion on January 19, 2017, alleging: (1) there was insufficient evidence to sustain the verdict; (2) the verdict was against the weight of the evidence; (3) the officers never witnessed Hardy with the firearm or him moving towards the location of the gun; (4) he did not own or operate the car in question; and (5) there was no evidence that he knew about the presence of the gun. *See* Post Sentencing Motion, 1/19/2017, at ¶¶ 1-6. This appeal followed.[7]

In his first argument, Hardy contends the court erred in failing to suppress the evidence because the inventory search was invalid. Hardy's Brief

---

[5] The trial court stated its decision could change based on further review of legal precedence. *Id.* at 23.

[6] The court did not impose any further penalty with respect to the remaining crimes.

[7] On April 5, 2017, the trial court ordered Hardy to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Hardy filed a concise statement on May 22, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 25, 2017.

at 11.  Before we may address this claim, we must determine whether Hardy

has properly preserved the issue.

> "[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 2006 PA Super 186, 903 A.2d 1269, 1272-73 (Pa. Super. 2006); *Commonwealth v. Thur*, 2006 PA Super 208, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

> It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final.  In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.

> *Commonwealth v. Metzer*, 430 Pa. Super. 217, 634 A.2d 228, 233 (Pa. Super. 1993) (citations omitted).

*Commonwealth v. Freeman*, 128 A.3d 1231, 1241 (Pa. Super. 2015).

Here, the trial court notes that while Hardy raised an improper search

and seizure argument in his suppression motion, he abandoned the issue at

the time of the October 18, 2016, hearing and "limited the scope of the

suppression hearing to a single issue – the suppression of the statement for

the false identification charge."   Trial Court Opinion, 7/25/2017, at

unnumbered 2.  The court, therefore, found "[t]his disconnect amounts to a

waiver of any suppression related arguments."  *Id.* (footnote omitted).

We agree with the court's finding. The record was not developed with respect to any evidence concerning the inventory search and whether it was proper. As the trial court pointed out, neither Deputy Garrett nor Detective Grossman testified about the inventory search at the suppression hearing. **See id.** at n.1. Accordingly, Hardy's first issue is waived and we need not address it further. **See also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Next, Hardy claims there was insufficient evidence to convict him of person not to possess firearms and carrying a firearm without a license. **See** Hardy's Brief at 17.

Our well-settled standard of review regarding sufficiency of the evidence claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation

omitted), *appeal denied*, 112 A.3d 651 (Pa. 2015).

> The crime of persons not to possess firearms is defined as follows:
>
> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

> A defendant is guilty of carrying a firearm without a license, in pertinent

part, as follows:

> **(c)  *Other persons.* —** In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
>
> > **(1)** A person who is a fugitive from justice.  This paragraph does not apply to an individual whose fugitive status is based upon a nonmoving or moving summary offense under Title 75 (relating to vehicles).

18 Pa.C.S. § 6105(c)(1).

> With respect to both crimes, Hardy contends:
>
> [A] review of the facts show that the Commonwealth failed to establish, beyond a reasonable doubt, that Mr. Hardy constructively possessed the handgun that police found under the passenger seat of the car in which Mr. Hardy was riding.  Isaiah Peeples drove the car, and there was no evidence that the car was registered to Mr. Hardy.  Mr. Peeples remained in the car while Mr. Hardy was removed from it.  Neither Deputy Sheriff saw the gun when Mr. Hardy was in the car, and there was no testimony that his DNA or fingerprints were on it.  The gun was not found in an area where Mr. Hardy had exclusive control, and there was no testimony that any items of Mr. Hardy's was found in the car.  The gun was not registered to Mr. Hardy.

Hardy's Brief at 18 (record citations omitted). Furthermore, Hardy argues:

> [T]he Commonwealth did not establish, beyond a reasonable doubt, that [he] had both the power and intent to control the gun that [Detective] Grossman found under the front passenger seat. The[re] was no evidence from the Commonwealth that Mr. Hardy was seen reaching under his seat. There was no fingerprint or DNA evidence establishing Mr. Hardy's control of the gun. Lastly, Mr. Hardy did not own the car.

*Id.* at 20. Hardy also emphasizes there was no evidence he made "furtive movements towards his waistband, pocket or any article of his clothing." *Id.* at 22.

When a prohibited item is not discovered on a defendant's person, or in his actual possession, as is the case here, the Commonwealth may prove the defendant had constructive possession of the item.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, [] 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa. Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-821 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013). "An intent to maintain a conscious

dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." ***Commonwealth v. Harvard***, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted), *appeal denied*, 77 A.3d 636 (Pa. 2013).

At trial, the court found the following to support Hardy's firearms convictions:

> My rationale is that the driver -- I agree it's his car, and he has constructive possession, and it's at arms length one could agree. However, there is no furtive movements, and no one sees him doing anything inappropriate. He's a guy whose car is stuck in rush hour in a high travel area, and his wheel is messed up, and the most I get from that is that two young guys are maybe smoking weed, because D[ectective] Grossman smells marijuana, but there is no evidence that I got that would link the driver to the gun other than it being in his car, and it was directly under where the passenger was.
>
> There is a rebuttable presumption that it was the passenger[']s. Further, the incriminating evidence against the passenger is he doesn't respond when asked what his name is. To me, that's an intention to deflect or extricate himself from being there and the real[i]ty that he is in this car. I know it's circumstantial evidence, but it leads me to believe that he's the party that's responsible for the gun. It's right under the seat. He's in a situation where all he had to do was tell the truth. "I don't have a license and my name is Darrin Hardy." If he said his name was Darrin Hardy, then this wouldn't have escalated I believe[.]
>
> …
>
> [A]nd your car is broke down and you start lying to the police about who you are, and there is a .45-caliber gun under your seat, and you are lying and making up names and saying you are those people, then you aren't at ground zero. You have gone backwards in terms of credibility.

N.T., 10/18/2016, at 40-41, 42.

- 10 -

In its Rule 1925(a) opinion, the trial court further elaborated on its determination as follows:

> Through the power of circumstantial evidence the government showed Mr. Hardy was more than just present in the car where a gun was found. The manner in which the gun was found suggested his possession as the butt of the gun was "facing the passenger side door" and "the barrel was facing the rear side of the vehicle." The location of the gun also contributes as it was right under the front seat passenger seat. His giving a phony name also contributed to the collection of circumstances that was sufficient to convict.

Trial Court Opinion, 7/25/2017, at unnumbered 2 (record citation omitted).

We agree with the court's finding. Furthermore, "the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006).

Here, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence *in toto* was sufficient to sustain the trial court's finding that Hardy constructively possessed the weapon, where: (a) during an inventory search, the gun was found directly underneath Hardy's seat with the butt of the gun facing the passenger side door and the barrel facing the rear

side of the vehicle; and (b) he initially lied to police about his identity.[8] As such, the trial court, sitting as the fact-finder, could reasonably infer the firearm was well within Hardy's reach and he had the power and intent to control the gun.[9] *See Hopkins*, *supra*. Furthermore, "it is possible for two people to have joint constructive possession of an item of contraband." *Commonwealth v. Kinard*, 95 A.3d 279, 292 (Pa. Super. 2014). Accordingly, we conclude there was sufficient evidence to enable the trial court

_____

[8] *See Commonwealth v. Flythe*, 417 A.2d 633, 634 (Pa. Super. 1979) ("It strains the imagination to believe that defendant innocently entered this vehicle having no knowledge of the items found therein when, the pistol at least, was within a few inches of him and a portion of it was in plain view.").

[9] Hardy cites *Commonwealth v. Boatright*, 453 A.2d 1058 (Pa. 1982), for the argument that the case against him was substantially weaker than in *Boatright*, where the firearm conviction was overturned because the evidence did not establish the defendant possessed the gun. *See* Hardy's Brief at 21. In *Boatright*, the police responded to a radio call concerning three "suspicious" men in an automobile parked outside a residence. *Boatright*, 453 A.2d at 1058. Upon arriving at the scene, one officer observed the defendant, seated in the front passenger seat, make movements towards his left rear but could not see his hand or arm, only the movement of his body. *Id.* The officer opened the door, asked the defendant to exit, and then saw a gun on the left rear floor of the vehicle. *Id.* The vehicle was occupied by a driver and another passenger, sitting in the left rear seat. *Id.* at 1058-1059. In reversing a panel of this Court's decision, the Pennsylvania Supreme Court held: "The only evidence other than mere presence was [the officer]'s testimony that [the defendant] made a movement toward the left rear of the vehicle. This evidence cannot provide proof beyond a reasonable doubt that [the defendant] possessed the firearm in question." *Id.* We find *Boatright* distinguishable from the present matter, in which, here, the gun was observed directly underneath the seat where Hardy was sitting as opposed to behind him, and Hardy did, in fact, fabricate his identification information to both responding officers. Therefore, one cannot conclude the evidence against him was weaker than in *Boatright*.

to find Hardy constructively possessed a firearm. Therefore, Hardy is not entitled to relief with respect to his sufficiency challenge regarding the firearms convictions.

Lastly, Hardy contends there was insufficient evidence to convict him of false identification to law enforcement officers pursuant to 18 Pa.C.S. § 4914(a). *See* Hardy's Brief at 23. Hardy states: "It is not illegal to provide false information to a law enforcement authority as to one's identity unless and until one is first apprised that one is the subject of an official investigation of a violation of law." *Id.*

Keeping our sufficiency standard of review in mind, we note the crime of false identification is defined as follows:

> **(a)** *Offense defined.* **—** A person commits an offense if he furnishes law enforcement authorities with false information about his identity **after being informed** by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the **subject of an official investigation** of a violation of law.

18 Pa.C.S. § 4914(a) (emphasis added).

> Under the plain language of the statute, three conditions must be satisfied before an individual will be found to have violated the statute by providing false information about his identity. First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer. Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law. Third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

*In the Interest of D.S.*, 39 A.3d 968, 974 (Pa. 2012).

- 13 -

Here, the trial court concedes that it erred in finding Hardy guilty of this offense:

> The element which Mr. Hardy believes is lacking in proof is the second – being informed by an officer that he is the subject of an official investigation. [Deputy] Garrett testified that he "did not tell [Mr. Hardy] he was under official investigation." On cross-examination, [Detective] Grossman testified that Mr. Hardy "was detained and going to be taken to the jail for fingerprinting." Not happy with that answer, counsel [for Hardy] choose [sic] a different route to get the answer she was seeking. After refreshing his recollection with the preliminary hearing transcript, [Detective] Grossman confirmed that Mr. Hardy was informed about the official aspect of this investigation AFTER Mr. Hardy gave him a phony name. Our law – *In re: D.S.* – requires just the opposite. To sustain a conviction for giving law enforcement false information about their identity, the citizen must be informed they are subject to an investigation. It is only after that purpose is communicated to the person and then followed by false identification information can a conviction be sustained. The sequence required by our precedent is not part of this record. The conviction for false identification to a law enforcement official should be reversed.

Trial Court Opinion, 7/25/2017, at unnumbered 3-4 (footnote omitted).[10]

We agree with both parties and the trial court that the conviction for false identification was in error. Accordingly, we vacate the judgment of sentence for false identification. Nevertheless, Hardy's sentencing scheme is not upset because the trial court did not impose a penalty for the false identification conviction. Therefore, there is no need to remand for re-sentencing.

---

[10] The Commonwealth agrees with the trial court's determination that Hardy's conviction for false identification should be vacated. *See* Commonwealth's Brief at 19-22.

Judgment of sentence at 18 Pa.C.S. § 4914 (a) vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2018