J-A31030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PHILLIP CARL PECK | |
| Appellant | No. 568 MDA 2014 |

Appeal from the Judgment of Sentence October 30, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000854-2012

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 04, 2015**

Phillip Carl Peck appeals from the judgment of sentence imposed on October 30, 2013, in the Court of Common Pleas of Lebanon County, following his conviction on charges of DUI – highest rate of alcohol, third offense, and DUI – general impairment, third offense.[1]  Peck was sentenced to one to five years' incarceration.  Peck filed a post sentence motion claiming the verdict was against the weight of the evidence.  In addition to challenging the weight of the evidence, in this timely appeal, he also claims the evidence was insufficient in that the Commonwealth did not prove he was in actual physical control of the vehicle.  Following a thorough review of

---

[1] 75 Pa.C.S. §§ 3802(c) and 3802(a)(1), respectively.

the submissions by the parties, relevant law, and the certified record, we affirm, albeit on different reasoning.[2]

We recite the salient facts as stated in the trial court's Pa.R.A.P 1925(a) opinion.

> Scott Herneisey testified that during the early morning hours of March 2, 2012, he was home at his apartment at [XXX] West Main Avenue in Annville. He was attempting to sleep but was kept awake by loud music blaring outside his apartment. After twenty to thirty minutes, he went downstairs to the street and approached the vehicle from which the music was coming. The vehicle's engine was running and [Peck] was sitting in the driver's seat. When Herneisey knocked on the driver's side window and motioned for [Peck] to turn down the music, [Peck] looked at Herneisey for a few seconds but did not turn down the music. Herneisey testified that since [Peck] appeared to be "drunk or messed up" and Herneisey did not want any trouble, he contacted the police.
>
> On cross-examination, Herneisey testified that he only knew that the vehicle had been parked in the street for as long as the music had been playing and that he had noticed that the brake lights were on. Corporal Steven Werner of the Pennsylvania State Police testified that he and Trooper Day were dispatched for a report of a vehicle parked on West Main Street with loud music playing and that they arrived at the scene at approximately 3:27 that morning. Upon arriving at the scene, they found [Peck's] vehicle facing east on Main Street with the engine running, the headlights and brake lights on, and [Peck] sitting in the driver's seat slumped over. The Troopers parked directly in front of [Peck's] vehicle and activated the overhead lights of the cruiser. When they approached the vehicle, Trooper Werner observed that the music was very loud, that the windows were rolled up, and that [Peck] was the sole occupant. [Peck]

_____

[2] "An appellate court may affirm a judgment or verdict for any reason appearing of record." **Commonwealth v. Melvin**, 103 A.3d 1, 19 (Pa. Super. 2014) (citation omitted).

- 2 -

was slumped over holding a cigarette in his hand. When Corporal Werner knocked on the driver side window, [Peck] woke up, appeared disoriented, and stared at Trooper Day, who was on the other side of the vehicle. When Corporal Werner told him to turn the radio down, [Peck] continued to look at the Trooper "with a blank stare." Corporal Werner was able to open the door, reach in to turn off the engine, and remove the key from the ignition.

After a time, Corporal Werner was able to awaken [Peck] and have him step out of the car. When Corporal Werner asked [Peck] where he was coming from, [Peck] looked in an easterly direction. Upon further questioning, [Peck] told Corporal Werner that he had been drinking beer and shots at the Corvette Bar, which was located a short distance away, until between 1:30 and 2:30 a.m. He informed Corporal Werner that he had intended to walk home from the bar, but that he was sitting in his car to keep warm. Trooper Werner also recalled [Peck] informing him that he had a colostomy bag and a bag to catch his urine, that he had decided he couldn't walk home and was going to "sleep it off" in his car. Corporal Werner testified that the temperature was cold that morning.

Trial Court Opinion, 6/11/2014, at 2-4.

Against this background of evidence, Peck claims there was insufficient evidence to prove he had "actual physical control" of his car. Peck argues actual physical control of a vehicle is demonstrated through the totality of the circumstances including the factors of the "motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the car." **Commonwealth v. Toland**, 888 A.2d 901, 904 (Pa. Super. 2005) *citing* **Commonwealth v. Johnson**, 833 A.2d 260, 263 (Pa. Super. 2003).

Specifically, he claims there was no evidence showing he had driven the car.[3]

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. **Commonwealth v. Barnes**, 871 A.2d 812, 819 (Pa. Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. **Id.** We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. **Id.** The jury was free to believe all, part or none of the evidence. **Id.** This Court may not weigh the evidence or substitute its judgment or that of the factfinder. **Id.**

**Commonwealth v. Thur**, 906 A.2d 552, 568-69 Pa. Super. 2006).

In order to convict a person of DUI, the Commonwealth must prove, in relevant part, the defendant was either driving, operating, or in actual physical control of the vehicle.[4] **See** 75 Pa.C.S. 3802. In this matter, the parties agreed that actual physical control was the element of proof at issue.

_____

[3] The trial court asserted the evidence was sufficient to prove Peck had driven the car. **See** Trial Court Opinion at 7-8. We note, however, that the trial court misstated some of the evidence. Peck *was* parked on a street adjacent to the bar where he had been drinking, N.T. Trial at 46. The location where Peck was found *was not* across the street from the address listed on his driver's license. Peck was found on Main Street. **Id**. at 11. His driver's license carried an address on Railroad Street, **id**. at 47, which is near the Lehigh Valley College. **Id**. at 46. However, because we affirm on alternate grounds, any error in this regard is harmless.

[4] These terms are not defined by statute. The practical difference between operating and actual physical control of a vehicle is unclear. "The term 'operate' requires evidence of actual physical control of either the machinery or the motor vehicle or the management of the vehicle's movement, but not
*(Footnote Continued Next Page)*

- 4 -

The fallacy of Peck's argument is while the majority of case law indicates some proof of movement is necessary to convict, that case law does not address the fact that the standard jury instruction regarding actual physical movement, does not require that finding. The standard jury instruction is relevant here because that is what Peck asked for and is what the jury received.

> THE COURT: We're going to go back on the record counsel to talk about instructions, jury instructions. Anybody have any special favorites they'd like me to give here to this jury?
>
> [Prosecutor]: I'm fine with the standards, Your Honor.
>
> [Defense Counsel]: I'd just ask the standards with *the additional explanation under the standard instruction as to the actual physical control* is because there's no allegation that he was driving or in operation but under the standard subsection which in Court's discretion would describe what actual physical would be, I think it's appropriate in this case.

N.T. Trial, 8/8/2013, at 148-49 (emphasis added).

The trial court then gave the jury the standard jury instruction regarding actual physical control, as requested by defense counsel.

> [The Court]: The statute uses the terms drive, operate, and actual physical control because the crime of driving under the influence can be committed not only by a person who actually drives a vehicle, but also by one who operates or is in actual physical control of the movement of a vehicle. A person does not drive unless he actually has the vehicle moving, and of course, we do not have that in this case. As with any fact,

*(Footnote Continued)* ―――――――――――

evidence that the vehicle was in motion." ***Commonwealth v. Williams***, 871 A.2d 254, 259 (Pa. Super. 2005).

however, the Commonwealth may prove that the Defendant drove the vehicle by circumstantial evidence but again, that's not alleged in this case. Moreover, a person may operate or be in actual physical control of the movement of a stopped vehicle. These terms are broader than the term drive because the law is concerned with a threat to public safety from motorists who have an intention of driving a vehicle immediately within their control, as well as those who actually do drive one while they are under the influence. While the mere fact that a Defendant was somewhere within the passenger compartment of a vehicle, is not by itself, enough to show he was operating or was in actual physical control of it. *You should consider all of the facts and circumstances in deciding whether the Defendant was in physical control of the machinery of the vehicle or was in a position to manage its movement at the time and place alleged.*

**Id**. at 171-72 (emphasis added).

This instruction given is, in substance, a verbatim recitation of the standard instruction. **See** Pa.SSJI (Crim) 17.3802(a)(1) (2014) (last revised April 2005). The instruction defines operate and actual physical control together and does not require a finding that the Defendant has moved the vehicle.[5] Rather, the jury is asked to determine whether the Defendant was in physical control of the machinery or a position to manage its movement at the time and place alleged.

It is unclear how or when the case law and standard instruction diverged, yet it is apparent they have. The genesis of the elements of "motor running, location of the vehicle and additional evidence that the defendant had driven the vehicle" appears to be **Commonwealth v. Byers**,

_____

[5] Because the relevant terms, 'drive', 'operate', 'actual physical control', are not defined by statute, this instruction does not contradict the statute.

650 A.2d 468 (Pa. Super. 1994) which noted that "in a *majority* of cases, the suspect location of the vehicle, which supports an inference that it was driven, is a key factor in finding actual control." ***Id***. at 469 (emphasis added). However, ***Byers*** did not discuss the standard jury instruction.

Two years later, our Supreme Court decided ***Commonwealth v. Wolen***, 685 A.2d 1384 (Pa. 1996). ***Wolen***, a plurality decision,[6] involved a challenge to a supplemental instruction. Our Supreme Court quoted the instruction given, regarding actual physical control, and noted there had been no objection:

> A driver has actual physical control of his car when he has real bodily restraining or directing influence or dominion or regulation over its movement or the movement of its machinery. It is not dispositive that the driver's car was not moving and that the driver is not making an effort to move it when the officers arrived. A driver may be in actual physical control of his car and therefore operating it while it is parked or merely standing still so long as the driver is keeping the car in restraint or in a position to regulate its movement.
>
> Neither is it dispositive that the driver was asleep at the time that the officers arrived. An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving, but it does exist. While at the precise moment the defendant was approached by the officers, he may have been exercising no conscious volition with regard to

---

[6] Six Justices participated in the decision. Three Justices made up the majority, two Justices concurred, and one dissented. The dissent did not criticize the original jury instruction; it only criticized the supplemental instruction which it believed directed a guilty verdict if the jury found the defendant was actually behind the wheel of the car at the time the police arrived.

the vehicle, there is still a legitimate inference to be drawn that the defendant has his choice of placing himself behind the wheel and either starting the vehicle or permitting it to run. He, therefore, has the actual physical control of the vehicle even though the manner in which such control was exercised resulted in the vehicle remaining motionless.

*Id*. at 1387. While this instruction is not a verbatim recitation of the current instruction, it is very similar and it does not require proof of movement of the car.

One year prior to *Wolen*, a panel of our Court decided *Commonwealth v. Woodruff*, 668 A.2d 1158 (Pa. Super. 1995), in which the sufficiency of the evidence and the jury charge were at issue. Regarding actual physical control, *Woodruff* stated:

We find that appellant was in "actual physical control" under the statute when he was found by the police. Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control;" of an automobile" the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle."

*Id*. at 1161.

Later in the decision, the jury charge was quoted:

The crime of driving under the influence can be committed, not only by a person who literally drives a vehicle, but also [by] one who operates or is in actual physical control of the movement of a vehicle. A person does not drive, unless he actually has the vehicle moving, however, a person may operate or be in actual physical control of the movement of a standing vehicle. These terms are broader than the term drive. They cover certain situations where a person, under the influence, is a distinct threat to public safety, even though he is not actually driving at the time. Thus, a person operates or [is] in actual control of a

motor vehicle, if he is in actual physical control of either the machinery of the vehicle or of the management of the movement of the vehicle itself.

You may consider circumstantial evidence in determining whether the defendant was driving, operating or in actual physical control of the movement of a vehicle. Factors that you may consider in determining whether the defendant was in actual control of the movement of a vehicle are[:] ... where the vehicle was located, whether the engine was running, whether the lights were on, whether the defendant was located or seated in the vehicle and, specifically, whether he was seated behind the steering wheel and, generally, whether the defendant had control and management of the vehicle. The Commonwealth need not prove that the vehicle was actually in motion.

*Id*. at 1162.

Despite the fact that this instruction says nothing about proof that the vehicle had been moved, **Woodruff** held:

The first paragraph of the instruction given in the instant case cited above, however, comports exactly to the current version of Pennsylvania's Suggested Standard Jury Instructions. **See** Pa.SSJI (Crim.) 17.3731C (1991).[7] Moreover, the 1985 version of this instruction, which is nearly identical to the current version, is quoted approvingly in **Crum***. See [Commonwealth v.] Crum*, 362 Pa.Super. [110] at 115-17, 532 A.2d [799] at 801-802. The instruction, therefore, reflects accurately our relevant case law on the subject. **See Byers***,* 437 Pa. Super. at 506, 650 A.2d at 470.

*Id*.[8]

---

[7] 75 Pa.C.S. § 3731 was the prior version of Section 3802.

[8] In **Wolen**, our Supreme Court criticized that portion of the charge that spoke of the potential dangers to the public at large. Rather, it stated that
*(Footnote Continued Next Page)*

The charge given in **Woodruff** is substantially similar to the charge given instantly, and **Woodruff** approved of the charge while indicating that had been the standard charge for at least the ten previous years.[9] Accordingly, the charge given in the instant matter has currently been accepted and approved of for approximately 30 years.

We return now to the argument before us. Peck claims because there was no evidence his car had moved, his conviction is unsustainable. However, the jury was never asked to determine that fact. Rather, the jury was asked to determine whether Peck was in "physical control of the machinery or was in a position to manage it's movement at the time and place alleged." **See** Jury Charge, **supra**. There is no question that the evidence produced at trial supports a determination that Peck was in a position to manage the movement of the car at the time and place alleged. Peck was behind the wheel, had started the car, turned on the headlights, and had his foot on the brake. The only thing left to actually move the car was to put it in gear. Accordingly, the jury verdict is based upon sufficient

_(Footnote Continued)_ ───────────────

there is a _per se_ threat to the public, "even if there are no other members of the public immediately endangered." **Wolen**, 685 A.2d 1386, n.4 (Opinion Announcing the Judgment of the Court). Again, we note there was no criticism of that portion of the charge that omitted consideration of movement of the vehicle.

[9] We note this time frame includes the **Byers** decision.

evidence as charged. Because Peck never asked the jury to determine if he had moved the car, he cannot complain now that that element is lacking.

Peck's challenge to the weight of the evidence is based upon the same argument regarding movement of the car. Therefore, this claim must also fail.

Judgment of sentence affirmed.[10]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2015

---

[10] Although we have noted an apparent divergence between case law and jury instructions, we take no position on which is the "proper" interpretation. We have determined that the jury decision was consistent with both the evidence presented and the jury instruction that was requested and which was given.