J-S26041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                :             PENNSYLVANIA
                                                :
                  v.                        :
                                                :
MANUEL A. CINTRON                   :
                                              :
                Appellant          :     No. 869 EDA 2018

Appeal from the Judgment of Sentence February 22, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001486-2017,
CP-51-CR-0007199-2015, CP-51-CR-0007242-2015,
CP-51-CR-0007244-2015

BEFORE:   PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:         **FILED OCTOBER 28, 2019**

Appellant, Manuel A. Cintron, appeals from the judgment of sentence imposed following his jury conviction of rape, kidnapping, sexual assault, attempted kidnapping, unlawful restraint, possessing an instrument of crime, false identification to law enforcement, and intimidation of a witness. The court sentenced him to an aggregate term of not less than forty-five years nor more than ninety years of incarceration, followed by five years' probation.  Appellant challenges the admission of certain evidence.  He asserts the evidence was insufficient to prove the charge of false identification to law enforcement. He

_____

[*] Retired Senior Judge assigned to the Superior Court.

claims his sentence was excessive. We vacate the conviction for false identification. In all other respects, we affirm.

We derive the facts of the case from the trial court opinion and our independent review of the certified record. The trial court set forth the facts of the case as follows:[1]

> The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that at 4:10 AM on May 1, 2015, [R.C.] was walking to catch the bus in the area of 12th and Ruscomb Streets in Philadelphia on the way to work. Manuel Cintron approached her, brandished a black semiautomatic pistol, pulled the slide back and threatened [R.C. with] "Come with me" and "Don't do anything stupid or I'll shoot you in the head." Cintron then pulled [R.C.] towards his old blue minivan. A struggle ensued and Cintron covered this victim's mouth when she attempted to scream. Fortunately, [R.C.] was able to fight her way out and escape. Running toward Broad Street, she managed to jump on a bus and get to her workplace in Center City, where she informed her boss and then the police about what had occurred, providing a detailed description of the defendant, his clothing, the van as well as the gun.
>
> About an hour after attacking [R.C.], Cintron approached [J.Q.] on the 2000 block of East York Street, again brandished the black semi-automatic hand gun, pointing it at [J.Q.], telling her "Do what I say and nothing bad will happen." Cintron ordered [J.Q.] into the van, which was without rear seating. The defendant drove around the area for a short period of time before stopping near a factory. Cintron ordered [J.Q.] into the back of the van and told her to undress. The victim asked if he was serious, began shaking and struggled to remove her clothing. Cintron took his prey's shoes and pulled down her pants, then took down his own pants demanding that [J.Q.] "Suck me off" and to "put this condom on me." She attempted to put the condom on Cintron but she was shaking with fear. This defendant tried to force his penis into this victim's vagina, but was unable as [J.Q.] was clenching

---

[1] To protect the privacy of the victims we have substituted initials for their full names.

her legs. Cintron flipped her over and vaginally raped this victim from behind. Following the rape, Cintron demanded [J.Q.]'s identification which he photographed with his cell phone - warning his victim that if anything happened to him, the defendant's brother would come after her and her family. He then returned her driver's license. Cintron drove the victim around, telling her what to say if stopped by the police. The defendant eventually dropped [J.Q.] off on the 2600 block of East York Street. [J.Q.] was hysterical when she arrived at work. A co-worker called her family and her uncle and brother picked her up and took her to the hospital where they flagged down a police officer to report the crime. This victim gave a detailed description of the defendant, his clothing, the van and the gun. Episcopal Hospital does not admit sexual assault victims so [J.Q.] was transported to the Sexual Assault Response Center.

Surveillance video was obtained from the area, the van identified and composite sketches created. Early morning plain clothes surveillances were conducted and a similar van observed. The registered owner of the van admitted this defendant had paid for the van but put it in her name because the defendant did not have a valid drivers' license. [J.Q.] positively identified the defendant from a photo array, however [R.C.] was unable to do so. Mr. Cintron was arrested on May 18, 2015, in an apartment in the 700 block of Princeton Street in Philadelphia. Upon being confronted by the police, the defendant gave the name of "Omar Rivera".

On Christmas Day, 2016, [J.Q.] was at home with her family, when her brother retrieved the mail. There was a letter from the defendant in prison, addressed to his victim at her house. The intent of the letter was clear - to intimidate this victim.

Trial Court Opinion, 8/6/18, at 3-4 (record citations omitted).

We also note that Noah Brophy was the sexual assault nurse examiner ("SANE nurse") who performed the examination on the victim. When Nurse Brophy was not available for trial, the court permitted the Commonwealth to present the testimony of Dr. Ralph Riviello, as an expert, over the initial objection of Appellant. *See* N.T. Trial, 10/10/17, at 28.

Dr. Riviello was the founder and Medical Director of the Philadelphia Sexual Assault Response Center (sometimes referred to as "PSARC" in the record). He testified as an expert in sexual assault examination, and emergency medicine.[2] Ultimately, Cintron's counsel stipulated to Dr. Riviello's expertise. *See* N.T. Trial, 10/10/17, at 34. Dr. Riviello based his testimony on the patient records of the victim as prepared by SANE nurse Brophy, photographs taken by Brophy, as well as his own professional experience.

The trial court permitted the Commonwealth to publish to the jury one color photograph of three taken by Brophy, showing micro tears in the vaginal area not visible with the naked eye, as highlighted by a diagnostic blue dye, toluidine. The trial court gave the jury a cautionary instruction before they saw the photograph.

Cintron's defense was that the sex was consensual.[3] J.Q. denied consent, both on direct examination and on cross-examination. *See* N.T. Trial, 10/05/17, at 129, 155. Notably, Dr. Riviello testified that the photograph of the injury presented to the jury could *not* establish whether the

_____

[2] Dr. Riviello testified that in addition to serving as the medical director of PSARC, he was employed as a professor of emergency medicine at Drexel University, and as an attending physician in the Emergency Department at Hahnemann University Hospital. *See* N.T. Trial, 10/10/17, at 39.

[3] Appellant exercised his constitutional right not to testify. *See* N.T. Trial. 10/11/17, at 5. The defense rested without presenting any witnesses. *See* N.T. Trial, 10/11/17, at 16. Therefore, there was no evidence supporting the claim of consent. It was defense counsel who raised and argued the claim of consensual sex. *See e.g.,* N.T. Trial, 10/05/17, at 38.

- 4 -

sex was consensual or non-consensual. *See* N.T. Trial, 10/10/178, at 52 ("Nobody can do that."). He did testify that the injuries to the victim were consistent with J.Q.'s report of sexual assault. *See* N.T. Trial 10/10/17, at 54.

We also highlight that when the police came to arrest Cintron he denied his identity, claiming to be "Omar Rivera Morales" and offering a driver's license in that name as proof. *See* N.T. Trial, 10/10/17, at 129. However, the police recognized Cintron from his description, most notably a large, distinctive tattoo on his neck, even though he had dyed his hair, shaved off his goatee, and begun wearing glasses. The police arrested him.

At the close of its case, the Commonwealth moved a number of exhibits into evidence, including the SANE report, before it rested. The following exchange occurred:

> [**DEFENSE COUNSEL**] Your Honor, we have no objection. However, the majority of those exhibits were admitted for very limited purposes. We would have an objection for those limited purposes.
>
> **THE COURT**: That's fine. They are admitted for the record.

**N.T. Trial**, 10/11/17, at 15.

The jury convicted Cintron of all charges. When polled, the jury confirmed that the verdict was unanimous. After reviewing the pre-sentence investigation report, sentencing memoranda and other evidence, the court imposed an aggregate sentence of not less than forty-five nor more than ninety years of incarceration in a state correctional institution, as

recommended by the Commonwealth, followed by five years of reporting probation. This timely appeal followed the denial of Cintron's motion for reconsideration.[4]

Cintron presents five questions on appeal:

A. Is a forensic sexual assault examination report testimonial, implicating the state and federal Confrontation Clauses, and if so, did the trial court violate appellant's right of confrontation under Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution in permitting the use of and reading into the record the contents of that report by another expert as the basis of his own opinion?

B. Although Rule of Evidence 703 allows an expert to use inadmissible evidence to form an opinion, when the testifying expert's opinion has relevance and probative value only if the report he relied on is true, did the trial court err in permitting Dr. Riviello to testify to the contents of a report by a non-testifying employee?

C. Did the trial court err in permitting the introduction of a graphic, close up color photograph of the complainant's vagina as the probative value of the evidence was outweighed by its prejudicial effect and was otherwise cumulative?

D. Is the evidence insufficient to prove the charge of false identification to law enforcement where there was no evidence that Appellant was informed that he was the subject of an official investigation?

E. Did the trial court impose a manifestly excessive and grossly disproportionate sentence where it imposed a de facto life sentence in that the sentences were well beyond the aggravated range, they were applied consecutively without sufficient basis, and the court failed to consider the proper factors specified in Section 9721 of the Sentencing Code?

---

[4] Both Cintron and the trial court complied with Pa.R.A.P. 1925.

Appellant's Brief, at 5.

In his first issue, Cintron contends that the report of J.Q.'s examination by the SANE nurse, Noah Brophy, was testimonial in nature and, therefore, its use at his trial violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. We disagree.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." **See** U.S. Const. amend. VI. The United States Supreme Court has held that "this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citation omitted). Article I Section 9 of the Pennsylvania Constitution provides: "In all criminal prosecutions the accused hath a right . . . to be confronted with the witnesses against him. . . ."

Whether the admission of the SANE report violated an appellant's rights under the Confrontation Clause is a question of law, for which the appellate standard of review is *de novo*. Our scope of review is plenary. *See Commonwealth v. Yohe*, 79 A.3d 520, 544 (Pa. 2013).

> In *Crawford*, 541 U.S. at 51, 124 S. Ct. 1354, the [United States Supreme] Court held that the Sixth Amendment guarantees a defendant's right to confront those "who 'bear testimony' " against him, and defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial statements by a witness unless

the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 53–56, 124 S. Ct. 1354.

*Yohe*, 79 A.3d at 531 (footnotes omitted).

The [United States Supreme] Court described the class of testimonial statements covered by the Confrontation Clause as follows:

Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id. at* n.11, quoting *Crawford,* 541 U.S. at 51–52 (citation omitted).

Here, Cintron maintains that the SANE report is testimonial, such that the trial court violated his constitutional right to confrontation by "permitting the use of [the report] and reading into the record the contents of that report by another expert as the basis of his own opinion[.]" Appellant's Brief, at 4. Cintron's claim does not merit relief.

Preliminarily, we note that Cintron's repeated assertion that Dr. Riviello simply read the report into the record is belied by the trial transcript and substantially mischaracterizes Dr. Riviello's testimony. It is true that Dr. Riviello referred to the report. It is also true that he testified based on his own experience and expertise about how a SANE examination is conducted.

- 8 -

Moreover, Cintron's mischaracterization does not support his assumption that the report was testimonial.

In any event, Cintron fails to establish that Riviello's testimony deprived him of his right to confrontation. With respect to Riviello's testimony, Cintron can only claim to have been denied the right to confront two witnesses. First, he could argue he was denied the right to confront J.Q., whose statements were included in Brophy's report.

However, J.Q. (as well as R.C.) accused Cintron of multiple violent crimes. As noted previously, Cintron conceded that had sexual intercourse with J.Q. The primary factual issue at trial was therefore whether the intercourse was consensual.

J.Q. vigorously testified at trial that it was not. **See** N.T., 10/5/17, at 114-124. Cintron availed himself of the opportunity to cross-examine J.Q. at trial. **See id**., at 147-156. He therefore could not, and indeed does not, argue that he was deprived of his right to confront J.Q.

Cintron maintains that "the issue is not with what J.Q. said to Nurse Brophy, but what Nurse Brophy says he saw and heard, and then documented and relayed in a report." Appellant's Brief, at 31. However, he never specifies what Nurse Brophy reported that he claims is objectionable.

Our independent review of the SANE report confirms that Nurse Brophy only reported the information J.Q. gave him. He offered no opinions, made

no assessments of credibility or anything beyond the fact-based answers provided by J.Q.

A careful reading of Dr. Riviello's testimony confirms that aside from a factual recitation of the general procedures for a SANE examination, as implemented in the examination of J.Q., nothing in his testimony conveys what Nurse Brophy "saw and heard" beyond the objective facts of the examination itself as related to him by J.Q. (Appellant's Brief, at 31). In the end, Dr. Riviello opined that the physical observations, as opposed to J.Q.'s statements, contained in Brophy's report were consistent with consensual intercourse. ***See*** N.T., 10/10/17, at 67.

As a result, Cintron has failed to establish that he was entitled to confront Brophy. The inculpatory nature of Brophy's report was entirely due to the statements of J.Q. As Cintron concedes, he had the opportunity to confront J.Q. over her accusations. His failure to identify how any statement of Brophy was used against him at trial is fatal to his claim.

Additionally, this case is distinguishable from the line of cases cited by Cintron, which found their respective reports testimonial and surrogate (*i.e.*, non-author) testimony in violation of the Confrontation Clause. Importantly to the High Court, the reports in those cases proved "one fact necessary for [ ] conviction." ***Bullcoming v. New Mexico***, 564 U.S. 647, 651 (2012) (report which confirmed blood alcohol content in DWI case was testimonial); ***see also Melendez-Diaz v. Massachusetts***, 557 U.S. 305, 310–11 (2009) (analyst's

affidavit certifying suspect substance as cocaine was testimonial, implicating Confrontation Clause); ***Commonwealth v. Brown***, 185 A.3d 316, 318 (Pa. 2018), Opinion Announcing the Judgment of the Court, (autopsy report concluding manner of death from gunshot wounds to be homicide was testimonial in nature, but admission was harmless error).[5] ***Compare Yohe***, 79 A.3d at 543 (testimony of forensic toxicologist who analyzed test results of appellant's blood, determined blood alcohol content by comparing results, and authored Toxicology Report, satisfied appellant's right to confrontation).

As noted above, the factual issue at trial here was whether J.Q. consented. By Dr. Riviello's testimony, Brophy's physical observations of J.Q. during the SANE examination were consistent with both parties' positions. Brophy's out-of-court statements were not used to establish any element of the crimes the Commonwealth sought to prove. Cintron is due no relief on his first issue.

In his second issue, Cintron claims that the trial court erred in permitting Dr. Riviello to testify based on the Brophy SANE report. In an argument which frequently overlaps the arguments already made in his first claim, Cintron maintains the report "and its contents" should have been excluded. Appellant's Brief, at 22. He asserts that Pennsylvania Rule of Evidence 703

---

[5] We note for the sake of clarity and completeness that Cintron confuses ***Bullcoming*** with ***Melendez-Diaz*** and mis-cites the facts of the case. ***See*** Appellant's Brief, at 25.

(explicitly permitting an expert to rely on non-admissible facts or data) was improperly used to supersede his confrontation rights, with Dr. Riviello acting as a mere conduit. *See id.* at 32, 35-36. We disagree.

Preliminarily, on this issue, Cintron failed to raise this objection with the trial court. Instead, as previously noted, defense counsel made only a vague, generalized objection to "the majority" of the Exhibits moved into evidence by the Commonwealth. **N.T. Trial**, 10/11/17, at 15.[6]

> "A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." **Commonwealth v. Cousar**, 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied,* 553 U.S. 1035, 128 S. Ct. 2429, 171 L.Ed.2d 235 (2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. **Commonwealth v. Arroyo**, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); **Commonwealth v. Stoltzfus**, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); **Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa.Super.2003), *appeal denied,* 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and **specific** objection to preserve issue for appellate review).

---

[6] As noted, *supra* at 5:

> [**DEFENSE COUNSEL**]   Your Honor, we have no objection. However, the majority of those exhibits were admitted for very limited purposes. We would have an objection for those limited purposes.

**THE COURT**: That's fine. They are admitted for the record.

N.T. Trial, 10/11/17, at 15.

*Commonwealth v. Lopez*, 57 A.3d 74, 81–82 (Pa. Super. 2012) (emphasis in original).

In this case, Cintron failed to raise the objection he now proposes on appeal in the trial court. Accordingly, his claim is waived.

Moreover, it would not merit relief. The trial court properly determined that, to the extent that the nurse's SANE report incorporated statements by J.Q. herself when seeking medical treatment, those statements were either not hearsay or fell within a recognized exception to the hearsay rule. (**See** N.T. Trial, 10/10/17, at 28; **see also** Pa.R.E. 803 (4) (A, B) (Statement Made for Medical Diagnosis or Treatment.). Additionally, Rule 703 plainly permits an expert to base an opinion on facts or data even if that data would not be independently admissible. **See** Pa.R.E. 703. Cintron's second issue is waived and would not merit relief.

Cintron's third issue is that the trial court erred in permitting the jury to view one color photograph of the victim's vagina, stained with a diagnostic blue dye, toluidine, to show tears or abrasions not visible to the naked eye. Cintron asserts that the display of the photograph was inflammatory, with the probative value out-weighed by the prejudicial effect. (Appellant's Brief, at 39. We disagree.

> Our standard of review for Cintron's claim is for an abuse of discretion.
>
> A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. Accordingly, a ruling admitting evidence will not be disturbed on appeal unless

that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (internal quotation and citations omitted).

When considering the admissibility of photographs of a crime scene or victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

The trial court must apply a two-part test prior to admitting photographs into evidence over objection by a party. First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant. Next, if the trial court decides the photo is inflammatory, in order to permit the jury to view the photo as evidence, it must then determine whether it [ ] has essential evidentiary value.

***Commonwealth v. Funk***, 29 A.3d 28, 33 (Pa. Super. 2011) (citations omitted).

Here, we need not decide if the photograph was inflammatory. The trial court, in its discretion, decided that the photo was inflammatory, and we decline to disturb that finding. However, the court also concluded that the photograph had essential evidentiary value in confirming the vaginal injury sustained by J.Q. The photograph furnished the foundation for Dr. Riviello's testimony that the injury shown was consistent with J.Q.'s report of sexual assault. The trial court explained the procedures it followed after concluding that the photograph was inflammatory:

> The jury was only permitted to view the one photo, one time, for a very brief moment, and not permitted to take the photograph into the deliberation room. The jury was cautioned prior to the photograph being exhibited in an attempt to partially sanitize the inflammatory nature of the picture. Clearly the court did not abuse its discretion in allowing a single photograph of the victim's vaginal area where its probative value clearly outweighed the prejudice.

Trial Court Opinion, at 13. A jury is presumed to follows the trial court's instructions. *Commonwealth v. Baez*, 720 A.2d 711, 721 (Pa. 1998).

On independent review, we conclude that the trial court acted well within the bounds of its discretion, and we decline to disturb its ruling. Cintron's third issue does not merit relief.

Cintron's fourth claim is that the evidence was insufficient to sustain the guilty verdict for false identification to a law enforcement officer. *See* Appellant's Brief, at 41-44. The Commonwealth does not oppose vacating Cintron's concurrent probationary sentence. *See* Commonwealth's Brief, at 20. The trial court maintains that "under these specific circumstances" the evidence was sufficient to affirm the conviction. *See* Trial Court Opinion, at 17. On independent review, we conclude that under controlling authority, we are constrained to vacate the conviction.

Our Crimes Code defines the offense of false identification to law enforcement authorities as follows:

> **(a) Offense defined.—**A person commits an offense if he furnishes law enforcement authorities with false information about his identity **after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.**

- 15 -

**(b) Grading.** – An offense under this section is a misdemeanor of the third degree.

18 Pa.C.S.A. § 4914 (emphasis added).

Our standard of review of insufficiency claims is well settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

On appeal, Cintron does not deny that he gave the police false information. Nevertheless, he maintains that the police who came to arrest him did not inform him that he was the subject of an official investigation for violation of law. ***See*** Appellant's Brief, at 41-42.

Cintron cites ***In re D.S.***, 39 A.3d 968, 974–75 (Pa. 2012) (holding that information must be provided to the individual **by the law enforcement officer**). An implication from surrounding circumstances is not enough. ***See Commonwealth v. Kitchen***, 181 A.3d 337, 345 (Pa. Super. 2018) (*en banc*) (holding "Commonwealth must prove that individual was **told** by police that he or she was under investigation, and that must occur prior to the individual's

- 16 -

presentment of false identity information"); *see also Commonwealth v. Barnes*, 14 A.3d 128, 132 (Pa. Super. 2011) (declining to condone provision of false identification information to police officers, but applying "the explicit language of the statute").

Accordingly, we are constrained to reverse Cintron's conviction for this offense only. Because the associated sentence was for a term of probation, remand for re-sentencing is unnecessary. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa. Super. 2006) (finding no need for remand because vacating assault sentence did not disturb sentencing scheme where assault sentence was concurrent with other terms and did not increase aggregate length of incarceration). We grant relief on Cintron's fourth issue.

In his fifth and final issue, Cintron claims his sentence was manifestly excessive. We disagree.

> We review a sentencing court's determination for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1133-34 (Pa. Super. 2009) (citations omitted).

> It is well-settled that the right to appeal a discretionary aspect of sentence is not absolute. Rather, where an appellant challenges

the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal.

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a **case-by-case** basis.

\* \* \*

We have found that a substantial question exists when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

We cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists. . . .

When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits. . . . A Rule 2119(f) statement is inadequate when it contains incantations of statutory provisions and pronouncements of conclusions of law.

**Commonwealth v. Radecki**, 180 A.3d 441, 467–68 (Pa. Super. 2018)

(emphasis added) (citations, footnote and other punctuation omitted).

- 18 -

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (citation and internal quotation marks omitted).

Here, Cintron asserts in his Rule 2119(f) statement that the sentencing court "failed to consider all relevant factors as set forth in Section 9721(b) of the Sentencing Code (Title 42)." Appellants Brief, at 19.

Instead of developing a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code, or contrary to the fundamental norms which underlie the sentencing process, in support of a substantial question, he opts for a catchall recitation of numerous, undeveloped, frequently repetitive claims resembling the incantations and conclusory pronouncements disapproved in *Radecki*: *e.g.* "relevant sentencing criteria," Appellant's Brief, at 19, failure to consider "all relevant factors" *(id.),* "all relevant factors" (*id.* at 20); consecutive sentences, (*id.* at 20), "stacked enhancements" / consecutive sentences above guideline (*id.* at 21), and so forth. Cintron complains the trial court's sentence only paid "lip service" to mitigation. (*Id.* at 19).

The trial court correctly notes that mere assertions of excessiveness do not raise a substantial question. *See* Trial Court Opinion, at 19 (collecting

cases). It concludes that here Cintron failed to raise a substantial question on his primary claim of excessiveness. *See* Trial Court Opinion, at 19. The Commonwealth suggests a similar conclusion, citing *Radecki*, 180 A.3d at 468-470. *See* Commonwealth's Brief, at 20. We also conclude that, under *Radecki*, Cintron has failed to raise a substantial question.

Moreover, even if we were to determine that Cintron's discretionary aspects of sentencing claim raised a substantial question, we still would conclude that he is not entitled to relief.

Cintron faults the sentencing court for not properly considering his troubled childhood, the impact of deaths in the family, and older siblings who led him into a life of crime. However, where, as here, the sentencing court had the benefit of a pre-sentence investigation report, we can properly assume the court was aware of the defendant's character and weighed it along with mitigating statutory factors. *See Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010).

Cintron notes his relatively young age (twenty-four when the crimes were committed; twenty-five at trial) in connection with the length of his sentence. The trial court notes that Appellant was adjudicated delinquent five times, arrested as an adult sixteen times, and incarcerated after five convictions. *See* Trial Court Opinion, at 20. One of his arrests that did not result in a conviction involved a sexual assault at gunpoint on a prostitute. Charges were dismissed when the victim failed to appear for trial. The trial

court notes that Cintron has failed repeated efforts at rehabilitation and absconded from supervision.

Here, Cintron attempted to rape two women, both strangers to him, at gunpoint, off the street in pre-dawn hours while they were on their way to work, within an hour of each other. He threatened murder. The first victim managed to escape, but he succeeded the second time. Most but not all of Cintron's sentences were consecutive. He is not entitled to a "volume discount." **See Commonwealth v. Yeomans**, 24 A.3d 1044, 1050 (Pa. Super. 2011).

Under our standard of review, an abuse of discretion may not be found unless the trial court's decision is "clearly erroneous." **Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it."(**Id.**) (citations and internal quotation marks omitted)."Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement." **Commonwealth v. Moury**, 992 A.2d 162, at 171 (citation omitted).

Here, the trial court concluded that "[t]he sentence imposed properly took into consideration the nature of the crime, the defendant's character, and

the defendant's rehabilitative needs and the obligation to protect the public." Trial Court Opinion, at 23. Under our deferential standard of review, we discern no abuse of discretion in the trial court's sentence, and we decline to disturb it. Cintron's fifth claim merits no relief.

Appellant's conviction for false identification to law enforcement is reversed and the associated sentence vacated. In all other respects, we affirm the judgment of sentence.

President Judge Emeritus Gantman joins the majority.

Judge Pellegrini files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/19