J-S16034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN CHRISTOPHER ROGERS, JR. | : | |
| | : | |
| Appellant | : | No. 1072 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 28, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000415-2022

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: JUNE 24, 2025**

John Christoper Rogers, Jr. ("Rogers"), appeals from the judgment of sentence imposed following his jury convictions of aggravated assault and simple assault.[1]  We affirm Rogers' convictions but vacate the judgment of sentence imposed for his simple assault conviction.

The Commonwealth charged Rogers with aggravated assault, simple assault, and strangulation, following an attack on his former girlfriend, Latoya Bowman (the "Victim"), as she attempted to move out of their residence.  This matter proceeded to a jury trial.  With respect to the aggravated assault charge, the Commonwealth proceeded on a theory that Rogers attempted to

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1).

cause serious bodily injury — not that he in fact caused serious bodily injury. *See* N.T., 4/24-25/24 ("N.T., 4/24/25"), at 142.[2]

The Victim testified to the following: on November 30, 2021, she and Rogers were no longer dating, she packed her belongings, and she was on the couch in the living room, waiting for a ride from a friend, Kollene Stauffer ("Stauffer"). Shortly after 3:00 p.m., Rogers returned home and the first thing he did was call her a "stupid bitch." *Id*. at 67. Rogers punched the Victim with a closed fist in her face and upper body, "pulled [her] off the couch and [threw her] head up against the wall," and said "he wanted to kill" her. *Id*. at 66-67. Rogers then pressed both hands against her throat; the Victim had trouble breathing and feared Rogers "was really going to kill" her. *Id*. at 69. Rogers then resumed punching her. At some point, Rogers also took the Victim's phone because he saw Stauffer trying to make contact. The Victim's shirt ripped during the attack, and Rogers "made [her] change and . . . clean up because he didn't want anyone to see what he did." *Id*. at 72.

The Victim further testified to the following. After she changed, Rogers "allowed [her] to go to the front door" and "signal [Stauffer, who was in her vehicle,] to come around to the back." *Id*. Rogers started to help the Victim "load [her] things," but then "start[ed] to beat on [her] again in the dining room." *Id*. at 75. This attack consisted of punches to her face and upper

---

[2] One volume of trial transcript includes the proceedings on both April 24 and 25, 2024. For ease of discussion, we cite it as "N.T., 4/24/24."

body, and moved "into the kitchen where [Rogers threw her] head up against the window." ***Id***. at 76. The Victim described this as painful and feared the window would break. Rogers called her "all kinds of bitches [*sic*] and other names" and threatened to kill her. ***Id***. Rogers then choked her again with one hand while "throwing [her] head against the window." ***Id***. The Victim found it difficult to breathe.

The Victim further testified to the following. Rogers told her she "wasn't going anywhere" and "he was going to make [her] stay there for a few days until [her] bruising" and injuries healed. N.T., 4/24/25, at 79. Nevertheless, the Victim asked Rogers to help load her belongings into Stauffer's car, and he did. The Victim got into the car and asked for her phone back. Rogers refused. The Victim and Stauffer stated they would call the police and, while the car door was open, Rogers tried to pull the Victim out, hitting her face, arms, and legs. Ultimately, Rogers threw the Victim's phone at her face, and Stauffer drove away. The Victim testified that the entire incident spanned "at least a half an hour." ***Id***. at 70.

At 4:10 p.m., the Victim called 911 after leaving Rogers' home. The Commonwealth played a recording of this phone call. The Victim further testified that she was in great pain, slept at Stauffer's home for the next two days, and made a police report one or two days after the attack.

The Commonwealth also called Stauffer, who testified to the following. She arrived at Rogers' residence around 3:35 p.m., parked, sent a text

message to the Victim, but received no response. Stauffer's phone rang several minutes later, and she heard the Victim say her name before the line disconnected. Stauffer then heard, from her car, a male voice inside the house "saying give me that effing [*sic*] coat back." N.T., 4/24/24, at 94. A few minutes thereafter, the Victim "came out and got into [her] car." *Id*. The Victim had a bruised and bloody lip and bruises on her face and stated her shoulder hurt.

The Victim directed Stauffer to drive to the rear of the home. There, the Victim entered the rear door of the home and told Rogers, "[T]he least you can effing do since you hurt me is help loading stuff." *Id*. The Victim "was in the house for a very long time." *Id*. at 95. Rogers did load her things while he and the Victim had "banter going back and forth." *Id*. at 94. The Victim then demanded her phone from Rogers, who refused, and they argued "for a couple minutes." *Id*. at 95, 98. Ultimately, Rogers threw the phone at the Victim. The Victim then entered the car, but was unable to close the door because Rogers "leaned into the passenger" side, punched the Victim in the face, and put his hand around her neck. *Id*. at 99. Meanwhile, Rogers and the Victim were "yelling back and forth at each other." *Id*. at 100.

York City Police Officer Terrence Bradshaw ("Officer Bradshaw") testified to the following. On December 2, 2021, two days after the assault, he took the Victim's report at the police station. He observed the Victim "was in obvious pain," "her eyes were bruised," and she had a blood clot in her right

eye, a cut behind her ear, and injuries to her lip. *Id*. at 108-09. The Victim also had "trouble lifting her arm to . . . write her statement." *Id*. at 108. Officer Bradshaw escorted the Victim to the hospital.

Kelly Grimes ("Nurse Grimes"), a forensic nurse[3] who examined the Victim at the hospital, testified to the following. The Victim reported pain in her head, neck, both shoulders, and lower back, describing the pain as "ten out of ten, the worse pain ever." N.T., 4/24/24, at 117-18. Nurse Grimes performed a physical examination and observed bruising on the Victim's: face, ear, both upper arms, wrist, and hip. Nurse Grimes also noted abrasions and redness on various parts of her body. The Victim told the nurse she was strangled and had pain swallowing.

Rogers testified in his own defense to the following. He was aware the Victim was moving out that day, and he went out. When Rogers returned home in the afternoon, the Victim was in the living room. Rogers went upstairs to "look[] for [his] things because" of stealing in the past. *Id*. at 155. Rogers saw one of his bags was missing, along with a notebook containing his son's Social Security card and birth certificate. Rogers returned downstairs, asked where those items were, "[a]nd that's when the incident pursued from that point [*sic*]." *Id*. The Victim threw something at his television, and Rogers

---

[3] Grimes explained: "A forensic nurse is a registered nurse who has specialized training in providing care to victims of domestic abuse, sexual assault, human trafficking, child abuse and elder abuse." N.T., 4/24/24, at 112.

"open hand slapped" her. *Id*. The Victim "was getting ready to go for . . . a coffee mug," and Rogers pushed her against the wall and "smacked her with an open hand" about seven times. *Id*. at 155-56. Subsequently, Stauffer arrived, and Rogers helped the Victim load things into the car. The Victim then took "things," which belonged to Rogers, out of the freezer. *Id*. at 157. The reason Rogers had the Victim's phone was "to try to get [his] possessions back, whatever [he] could [*sic*]." *Id*. When the Victim got in the car, Rogers also slapped her with an open hand because his "things were already in the car and they said they" were calling the police. *Id*. at 162. Rogers denied threatening or strangling the Victim, and instead stated he loved her. On cross-examination, Rogers stated he "slapped [the Victim] because [he] lost control," and "it was out of a rage [*sic*]." *Id*. at 160, 162.

The jury found Rogers guilty of aggravated assault and simple assault.[4] On June 28, 2024, the trial court imposed the following sentences: (1) for aggravated assault, four to eight years' imprisonment and one year of "state re-entry supervision to follow period of incarceration;"[5] and (2) for simple assault, nine to eighteen months' imprisonment, to run concurrently. Sentence Order, 6/28/24 (unnecessary capitalization omitted).

---

[4] The jury found Rogers not guilty of strangulation and terroristic threats.

[5] *See* 61 Pa.C.S.A. § 6137.2.

Rogers did not file a post-sentence motion, but filed a timely notice of appeal. He and the trial court complied with Pa.R.A.P. 1925.

Rogers presents two issues for our review:

I.  Was there insufficient evidence to support the guilty verdict for aggravated assault because (1) there was no evidence that [Rogers] had the requisite intent to cause serious bodily injury to [the Victim] and (2) there was no evidence that [Rogers] did an act which constituted a substantial step toward causing serious bodily injury?

II.  Did the trial court err in sentencing [Rogers] on both aggravated and the lesser-included simple assault where those counts should have merged because the crimes arose from a single criminal act and the elements of simple assault are included within the elements of aggravated assault?

Rogers' Brief at 4 (unnecessary capitalization omitted).

In his first issue, Roger challenges the sufficiency of the evidence for his conviction of aggravated assault. Our standard of review is well-settled:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted).

A person is guilty of aggravated assault if, *inter alia*, he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). As stated above, the Commonwealth proceeded only a theory that Rogers attempted to cause serious bodily injury. The Crimes Code[6] defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

This Court has stated: "Attempt, for aggravated assault purposes, is found where 'the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another.'" *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa. Super. 2001). In *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978), our Supreme Court

> created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on

---

[6] 18 Pa.C.S.A. §§ 101-9546.

the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. ***Alexander*** made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault. All we hold is that the evidence in the instant case is insufficient to support such a finding."

***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006) (citations omitted).

On appeal, Rogers avers the Commonwealth failed to present evidence that he had the requisite intent or took a substantial step to cause serious bodily injury to the Victim. Rogers concedes that he "punched her various times, banged her head against the wall, and put both hands against her throat." Rogers' Brief at 12. Nevertheless, Roger maintains there was: no testimony "regarding the force used" or the number of times he struck the Victim; no testimony that he kicked her or used objects to strike her; and no evidence of a concussion, loss of consciousness, or broken bones. ***Id***. at 13-14. Roger reasons the Victim "only lost her breath 'for a moment,'" and furthermore that there was no evidence to corroborate her testimony he threatened to kill her. ***Id***. at 14. With respect to the witness, Stauffer, Roger points out she did not testify that he made any verbal threats against the Victim. Rogers adds that the Victim "did not flee upon" Stauffer's arrival, and indeed she demanded he help load the car. ***Id***.

Rogers compares the evidence in this case to other decisions in which "the courts have found sufficient evidence to support a conviction:"

> Evidence that the victim was beaten, stomped, and left semiconscious was sufficient to prove an attempt to cause serious bodily injury. **Commonwealth v. Stancil**, 334 A.2d 675 (Pa. Super. 1975). Evidence that a defendant aimed kicks at a victim on the ground and stopped only upon arrival of police was sufficient to support a finding of intent to inflict serious bodily injury. **Commonwealth v. Gregory**, 406 A.2d 539, 542 (Pa. 1979). Evidence that a defendant repeatedly struck a victim with a tire iron, one on the head, that he was much larger than the victim, and that he told the victim he would kill him next time, was sufficient to support an inference that the defendant attempted to cause serious bodily injury to the victim. **Commonwealth v. Cavanaugh**, 420 A.2d 674, 675 (Pa. Super. 1980).

Rogers' Brief at 13-14. Rogers concludes the evidence in this case showed merely "an intent to cause pain — which only meets the definition of bodily injury, not serious bodily injury." *Id*. at 14-15 (citation omitted).

The trial court concluded the evidence and the reasonable inferences drawn therefrom supported a finding that Rogers "had the intent to inflict serious bodily injury on the Victim, and that he took repeated substantial steps toward carrying out that intent." Trial Court Opinion, 12/5/24, at 7. The court considered the Victim's testimony that Rogers repeatedly banged "her head against the wall pretty hard," punched her face and body, strangled her more than once, threatened to kill her multiple times, and hit her head against a window, to the point she was afraid the window would break. *Id*. at 3. The court also reasoned that Stauffer's testimony that she arrived at approximately 3:35 p.m., in conjunction with the stipulation that the Victim

- 10 -

made the 911 call at 4:10 p.m., supported a conclusion "that the attack did, indeed, last around half an hour." *Id*. at 4.

Following our review, we determine the record evidence, along with all reasonable inferences viewed in the light most favorable to the Commonwealth, supported the jury's guilty verdict for aggravated assault. *See Scott*, 325 A.3d at 849. We reiterate that the Commonwealth did not seek to prove the Victim in fact suffered serious bodily injury. Instead, the pertinent question is whether the evidence permitted the jury to find, beyond a reasonable doubt, that Rogers' attacks showed a specific intent to inflict serious bodily injury. We reiterate the evidence that Rogers engaged in a lengthy assault, which included numerous punches and strikes to the Victim's face and body, pressing his hands against her neck and choking her such that she had difficulty breathing, as well as his verbal threats to kill her. This record supports a finding that Rogers attempted to cause serious bodily injury, or intended to inflict serious bodily injury upon the Victim. *See* 18 Pa.C.S.A. §§ 2301, 2702(a)(1); *see also Galindes*, 786 A.2d at 1012.

Furthermore, contrary to Rogers' argument on appeal, the Victim's ultimate ability to leave the residence was not dispositive. This Court has stated: "[O]ur case law does not hold that the Commonwealth never can establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict bodily injury but did not inflict it. Rather, the totality of

the circumstances must be examined as set forth by *Alexander*." *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*).

Finally, Rogers' admission, at trial, that he was angry at the Victim was circumstantial evidence of animus. We reiterate the Victim's testimony that the "very first thing" Rogers did when he arrived home was to call her "a stupid bitch." N.T., 4/24/24, at 67. This Court has stated that "[t]he intent to cause serious bodily harm may be shown by circumstances surrounding the incident." *Commonwealth v. Caterino*, 678 A.2d 389, 391 (Pa. Super. 1996). For example, in *Commonwealth v. Bruce*, 916 A.2d 657 (Pa. Super. 2007), the defendant "walked to the parked car of the victim . . . , and delivered through the open driver's side window four punches to the face and throat of the" victim. *Id*. at 660. In considering whether the Commonwealth established an intent to cause serious bodily injury, this Court considered that "strong reason existed to believe [the defendant] harbored raw anger against [the victim] for allegedly raping [his] girlfriend . . . just the night before." *Id*. at 663.

The jury was free to believe all, part, or none of the witnesses' testimony, including that of Rogers. *See Scott*, 325 A.3d at 849. For the foregoing reasons, we conclude the evidence supported the jury's finding of guilt on the aggravated assault charge. Thus, no relief is due on Rogers' first issue.

In his second issue, Rogers argues the trial court improperly imposed a separate sentence on his simple assault conviction, as it merged with aggravated assault for sentencing purposes.[7]  In support, Rogers contends that both convictions arose from a single criminal act, and all the elements of simple assault are included within the elements of aggravated assault.  Rogers requests this Court vacate his simple assault sentence.

The trial court and the Commonwealth agree that relief is warranted. The trial court suggests, however, that because the simple assault sentence runs concurrently with the aggravated assault sentence, this Court may simply vacate the former without disrupting the overall sentencing scheme.

We consider the applicable standard of review and law:

> Whether crimes merge for sentencing purposes implicates the legality of the sentence . . . .  Therefore, our standard of review is *de novo* and our scope of review is plenary.  Merger of sentences is governed generally by Section 9765 of the Sentencing Code, which provides:
>
> > § 9765. Merger of sentences
> >
> > No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may

_____

[7] Rogers raised this issue for the first time in his Rule 1925(b) statement.  **See Commonwealth v. Jones**, 271 A.3d 452, 457 (Pa. Super. 2021) (stating that "[r]aising an issue for the first time in a Rule 1925(b) statement is insufficient to prevent waiver of an issue that the appellant failed to raise" before the trial court).  However, a sentencing merger claim implicates the legality of a sentence, and thus "can never be waived." **Commonwealth v. Sheets**, 302 A.3d 145, 152 n.4 (Pa. Super. 2023).

> sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.A. § 9765. "[T]he language of the legislature is clear. The only way two crimes merge for sentencing is if **all** elements of the lesser offense are included within the greater offense."

*Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa. Super. 2020) (some citations omitted).

Rogers' simple assault conviction arose under this subsection: "[A] person is guilty of assault if he . . . attempts to cause . . . bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). As stated above, a person is guilty of aggravated assault if he, *inter alia*, 'attempts to cause serious bodily injury to another." 18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines: (1) bodily injury as "[i]mpairment of physical condition or substantial pain;" and (2) serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

The simple assault subsection involves these elements: an attempt to cause **bodily injury**. 18 Pa.C.S.A. § 2701(a)(1). While the aggravated assault subsection involves an attempt to cause **serious bodily injury**, that term includes the element of "bodily injury." **See** 18 Pa.C.S.A. § 2301. The parties do not dispute that the two convictions arose from the same criminal act. Accordingly, we determine all the elements of simple assault are included

in aggravated assault, and thus the former merged with the latter for sentencing purposes. *See Watson*, 228 A.3d at 941.

We thus vacate the sentence for simple assault. However, as the trial court points out, this sentence ran concurrently with the aggravated assault sentence, and thus our disposition does not disrupt the overall sentencing scheme. We therefore decline to remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa. Super. 2006) (stating remand not required where this Court can vacate illegal sentence without upsetting the overall sentencing scheme).

Convictions for aggravated assault and simple assault affirmed. Judgment of sentence for aggravated assault affirmed. Judgment of sentence for simple assault vacated. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025